692 A.2d 540

NEIL H. LABREE, PLAINTIFF–RESPONDENT, v. MOBIL OIL CORPORATION, MOBIL RESEARCH & DEVELOPMENT CORP., AND ABC INC., A FICTITIOUS ENTITY, DEFEN-DANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued April 16, 1997—Decided April 28, 1997.

Before Judges SHEBELL, BAIME and PAUL G. LEVY.

*Patricia L. Dee,* Mt. Laurel, argued the cause for appellants (*Capehart & Scatchard, P.A.,* attorneys; *Thomas H. Morgan,* of counsel; *Ms. Dee,* on the brief).

*Lee J. Hughes,* Vineland, argued the cause for respondent (*Mazzoni, Marcolongo & Hughes, P.A.,* attorneys; *Mr. Hughes,* designated counsel, and on the brief).

SHEBELL, P.J.A.D.

In June 1995, plaintiff, Neil H. Labree ("plaintiff"), filed a Complaint in the Law Division, alleging that he was wrongfully discharged "in derogation of the agreement, contract, collective bargaining agreement and/or understanding previously in place regarding Plaintiff" (Counts One and Three) and that his discharge was in retaliation for his receiving Workers' Compensation benefits (Counts Two and Four). *See N.J.S.A.* 34:15–39.1. In the "Seventh Count" plaintiff repeats the allegations of the "First through Sixth Counts" and contends that as a result, he sustained "losses and damages" for which he demands judgment against all defendants. The complaint alternatively named as his employers the three defendants, Mobil Oil Corporation ("Mobil"), Mobil Research and Development Corporation ("Mobil R & D") and ABC, Inc ("ABC").

Defendants, Mobil and Mobil R & D, asserted as specific defenses, among others, that all claims were barred by the Statute of Limitations and that the court did not have jurisdiction over

certain counts of the complaint. Thereafter, they filed a motion for summary judgment. Following oral argument, summary judgment was granted to Mobil on all counts in which it was named as employer, but denied as to Mobil R & D on the counts relating to it. We granted Mobil R & D's motion for leave to appeal the denial and now reverse.

It is uncontested that plaintiff was hired by Mobil R & D in June 1981 and that plaintiff sustained a work-related injury in May 1989, which he reported to his employer. According to plaintiff, the company doctor informed him on at least two occasions he could return to light duty, however, light duty work was not available. Plaintiff was terminated in May 1990. On June 13, 1991, plaintiff filed a Workers' Compensation Claim Petition for disability resulting from his injury. This claim was later settled with Mobil R & D.

Plaintiff was a member of the Mobilab Union, Inc. ("Union") during the period that he was employed by Mobil R & D. The Collective Bargaining Agreement ("CBA") between Mobil R & D and the Union governed the relations between the parties "in matters concerning such employees' hours, wages and working conditions as authorized by law. . . ." The CBA does not mention light duty work, however, plaintiff maintains that providing light duty was a course of conduct followed by Mobil R & D. It is uncontested that plaintiff did not file a grievance under the CBA.

Mobil R & D sought summary judgment based on the assertion that plaintiff's claims were time barred. Plaintiff, in opposition to the summary judgment motion, alleged for the first time that his complaint was actually a fraud action, and therefore, governed by a six year statute of limitations.

Since this is an appeal from the denial of summary judgment, we must be guided by the standards set forth in *Brill v. Guardian Life Ins. Co. of America*, 142 *N.J.* 520, 666 *A.*2d 146 (1995) and *Rule* 4:46–2. In reviewing any summary judgment motion, both the trial court and this court must consider the facts in a light

most favorable to the non-moving party. *Brill, supra,* 142 *N.J.* at 523, 666 *A.*2d 146. This court must then determine

whether the competent evidential materials ... are sufficient to permit a rational factfinder to resolve the alleged dispute in favor of the non-moving party.

[*Ibid.*]

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." *R.* 4:46–2(c). "[W]hen the evidence 'is so one-sided that one party must prevail as a matter of law,' the trial court should not hesitate to grant summary judgement." *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 252, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986)). Where a state claim is preempted by federal law, summary judgment is generally required with respect to that claim. *Lewis v. American Cyanamid Co.,* 294 *N.J.Super.* 53, 60–67, 682 *A.*2d 724 (App.Div.1996).

■ Mobil R & D argues that plaintiff's wrongful discharge claim, based on the CBA and/or an "understanding previously in place," is preempted by federal law as the adjudication of the claim involves examination of the CBA. Because the claim is governed by federal law, Mobil R & D concludes the six month statute of limitations contained in the National Labor Relations Act ("NLRA") bars plaintiff's claim. *See* 29 *U.S.C.A.* § 160(b).

Plaintiff asserts that his wrongful termination claim should be governed by the six year statute of limitations set forth in *N.J.S.A.* 2A:14–1 and that his action is not preempted by federal law because it "sounds in fraud" and does not rely on the CBA as its sole basis. However, nowhere in plaintiff's complaint does any allegation of "fraud" or "misrepresentation" appear and plaintiff did not specifically plead the facts underlying his fraud allegation as required by *Rule* 4:5–8(a). Further, plaintiff never amended the complaint to include any fraud or misrepresentation allegations. Therefore, that the "claim sounds essentially in fraud," as asserted by plaintiff, cannot be supported.

We, therefore, turn to the preemption issue. It is well established that Congress has the authority to preempt state law. The more difficult question is whether a particular state law has been preempted by a federal law. Congressional intent appears to be the primary guide.

> Congress' power to pre-empt state law is derived from the Supremacy Clause of Art VI of the Federal Constitution. Congressional power to legislate in the area of labor relations, of course, is long established. Congress, however, has never exercised authority to occupy the entire field in the area of labor legislation. Thus the question whether a certain state action is pre-empted by federal law is one of congressional intent.
>
> [*Allis-Chalmers Corp. v. Lueck*, 471 *U.S.* 202, 208, 105 *S.Ct.* 1904, 1909–10, 85 *L.Ed.*2d 206, 213 (1985) (citations and footnote omitted).]

*See also Maher v. New Jersey Transit R.O.*, 125 *N.J.* 455, 593 *A.*2d 750 (1991). However, the Court recognized that, with respect to section 301 of the NLRA, 29 *U.S.C.A.* § 185 ("section 301"), Congress did not specifically state "whether and to what extent it intended § 301 of the [NLRA] to pre-empt state law." *Allis–Chalmers, supra*, 471 *U.S.* at 208, 105 *S.Ct.* at 1910, 85 *L.Ed.*2d at 213; *see also Lepore v. National Tool and Mfg. Co.*, 224 *N.J.Super.* 463, 474–75, 540 *A.*2d 1296 (App.Div.1988), *aff'd*, 115 *N.J.* 226, 557 *A.*2d 1371, *cert. denied*, 493 *U.S.* 954, 110 *S.Ct.* 366, 107 *L.Ed.*2d 353 (1989); *McQuitty v. General Dynamics Co.*, 204 *N.J.Super.* 514, 520–21, 499 *A.*2d 526 (App.Div.1985).

Section 301 states in pertinent part:

> (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties....
>
> [29 *U.S.C.A.* § 185(a).]

Section 301 has been held to apply "regardless of whether the claim is brought by a union or directly by an employee." *Angst v. Mack Trucks, Inc.*, 969 *F.*2d 1530, 1536 n. 5 (3d Cir.1992). Under the NLRA, 29 *U.S.C.A.* § 160(b) ("section 10(b)") provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge...." *See DelCostello v. Teamsters*, 462 *U.S.* 151, 103 *S.Ct.* 2281, 76 *L.Ed.*2d 476 (1983).

■   The primary intent behind federal preemption in the labor law context is to promote uniformity in the law governing collective bargaining agreements. *Allis–Chalmers, supra,* 471 *U.S.* at 210–11, 105 *S.Ct.* at 1911, 85 *L.Ed.*2d at 214–15.

> [Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.
>
> [*Id.* at 211, 105 *S.Ct.* at 1911, 85 *L.Ed.*2d at 215.]

"Section 301 will preempt state claims when the independent contract claims are founded directly on rights created by a CBA." *Leonardis v. Burns Intern. Sec. Services, Inc.,* 808 *F.Supp.* 1165, 1175 (D.N.J.1992). Additionally, "a claim based on [a] right [created by state law] is preempted if the application of state law requires the interpretation of a CBA." *Ibid.* It is for the court to examine the state claim and decide "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted." *Allis–Chalmers, supra,* 471 *U.S.* at 213, 105 *S.Ct.* at 1912, 85 *L.Ed.*2d at 216–17. However, if a claim has both state and federal law aspects, the state claim will not be preempted if its resolution does not require interpretation of the CBA. *Leonardis, supra,* 808 *F.Supp.* at 1175; *see also Lingle v. Norge Div. of Magic Chef, Inc.,* 486 *U.S.* 399, 409–10, 108 *S.Ct.* 1877, 1883, 100 *L.Ed.*2d 410, 421 (1988).

Here, we are convinced that plaintiff's claim for wrongful discharge is "inextricably intertwined" to the CBA and is in the nature of a "dispute[ ] traditionally resolved through arbitration" under a CBA. *Allis–Chalmers, supra,* 471 *U.S.* at 219, 105 *S.Ct.* at 1915, 85 *L.Ed.*2d at 220–21. Although plaintiff points out that light duty cannot be found in the CBA, his complaint reveals that his wrongful discharge, if not retaliatory, was tied to the unavailability of light duty. The analysis of plaintiff's wrongful discharge

claim cannot be completed without interpreting certain provisions contained in the CBA.

SECTION 17, entitled DISCIPLINE, states as follows:

Company shall have the right to discipline, *discharge* or suspend any employee for just cause at any time and to require such employee to leave the laboratory. *Union may protest any such act by Company in accordance with grievance procedure under this agreement* and may also thereafter take any discipline, discharge or suspension to arbitration for alleged insufficiency of just cause, in which event Article IX of this agreement shall apply.

[Emphasis added.]

Plaintiff could have sought to protest his termination pursuant to the Section 17 procedures and assert that he was terminated without just cause since light duty work should have been made available to him. He did not do so, and instead filed this lawsuit in Superior Court, notwithstanding the fact that wrongful discharge is clearly encompassed under the CBA.

The CBA agreed to by the Union and Mobil R & D, and binding on plaintiff, governs almost every aspect of the work relationship, including work assignments, promotions, lay-offs, shift schedules and changes, and grievance procedures. Although the CBA does not mention light duty, plaintiff's contention is that it was a course of conduct by Mobil R & D. As the CBA was intended to govern the entire employment relationship, any right to a light duty position should have been sought under that contract.

In these circumstances, we hold preemption by section 301 to be conclusive. It is a question of contract interpretation whether there was an implied promise to provide light duty positions to those employees who were injured, and if so, whether Mobil R & D breached that implied contract provision. *Allis–Chalmers, supra*, 471 *U.S.* at 215, 105 *S.Ct.* at 1913, 85 *L.Ed.*2d at 218. In any event, the issue of whether a light duty position should have been offered to plaintiff cannot be separated from the wrongful discharge claim. Therefore, since resolution of that claim necessarily involves examination of the CBA, section 301 preempts that claim.

As noted by the Court in *Allis–Chalmers, supra*, the allowance of state claims which seriously implicate the CBA will serve as a

disincentive to employees to follow the grievance and arbitration procedures. 471 *U.S.* at 219–20, 105 *S.Ct.* at 1915, 85 *L.Ed.*2d at 220–21. As plaintiff's claim was essentially for wrongful discharge, he should have first attempted to obtain relief through the grievance procedure in the CBA, which includes arbitration. *See also DelCostello, supra,* 462 *U.S.* at 163, 103 *S.Ct.* at 2290, 76 *L.Ed.*2d at 488 ("Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement [before filing suit]."). Had plaintiff not been satisfied with the relief afforded, he might have then filed a claim in federal court under the NLRA. He did not avail himself of those procedures.

Therefore, regardless of the factual disputes enumerated by the trial judge, we conclude that summary judgment should have been granted on the wrongful discharge claim (Count Three) in favor of Mobil R & D. Even when the factual disputes, such as when plaintiff became aware of the potential for light duty and whether or not light duty had been made available to other employees, are viewed in favor of plaintiff, the result does not change. The dispute is not one to be pursued in state court. We need not determine whether the limitations period of section 10(b) applies since plaintiff's suit should be dismissed as preempted by section 301. *See Allis–Chalmers, supra,* 471 *U.S.* at 220, 105 *S.Ct.* at 1916, 85 *L.Ed.*2d at 221.

In Count Four, plaintiff alleges retaliatory discharge, but seeks only "reasonable damages, punitive damages together with interest, attorney's fees and cost of suit." He does not claim personal injury or psychiatric damages and demands only compensation for his loss of work due to Mobil R & D's retaliatory discharge. In the complaint, plaintiff states that he "has been unable to find gainful employment since [his] discharge." He, therefore, argues that the six year limitation of *N.J.S.A.* 2A:14–1 is applicable. Mobil R & D contends that plaintiff's claim of retaliatory discharge is barred by the two year statute of limitations contained in the Workers' Compensation Act ("Act").

■ The issue of the appropriate statute of limitations to apply in common law actions alleging retaliatory discharge for filing a Workers' Compensation claim is one of first impression in this State. *N.J.S.A.* 34:15–41, the statute of limitations set forth in the Workers' Compensation Act, states that the time in which a claim petition should be filed is two years. However, nothing in the Act indicates that the filing of a civil complaint alleging retaliatory discharge falls under this statute of limitations. Further, *N.J.S.A.* 34:15–41 refers only to compensation for "personal injury or death." We conclude that the two year statute of limitations in the Act applies only to claim petitions filed in the Division of Workers' Compensation and not to a civil complaint for retaliatory discharge filed in the Superior Court.

We, therefore, must look elsewhere to determine the Legislature's intent regarding the time limitation for civil actions to redress discharge in retaliation for seeking workers' compensation benefits. We turn our attention to whether the six year or the two year limitations period, found in *N.J.S.A.* 2A:14–1 and 14–2, respectively, should apply to plaintiff's claim for retaliatory discharge.

The case of *Montells v. Haynes*, 133 *N.J.* 282, 627 *A.*2d 654 (1993), provides assistance in our consideration of the issue. The *Montells* Court was asked to "determine the appropriate statute of limitations applicable to sexual-harassment actions under *N.J.S.A.* 10:5–13, the Law Against Discrimination (LAD)." *Id.* at 285, 627 *A.*2d 654. The Court held that, in order to promote efficient prosecution of such claims, a single statute of limitations should apply to all LAD claims. *Id.* at 286, 289–91, 627 *A.*2d 654. The Court further determined that the two year personal injury limitation period of *N.J.S.A.* 2A:14–2 was the appropriate limitations period for civil claims under the LAD. *Id.* at 291–95, 627 *A.*2d 654.

In determining whether the six year or the two year limitations period should govern LAD claims filed in the Superior Court, our Supreme Court focused "on the nature of the injury, not the underlying legal theory of the claim." *Id.* at 291, 627 *A.*2d 654.

The Court then engaged in an analysis of the injuries governed by each limitations period.

> The question becomes whether injuries under the LAD are more like an "injury to the person" under *N.J.S.A.* 2A:14–2 or like injuries under *N.J.S.A.* 2A:14–1, specifically those arising from breach of contract or from "any tortious injury to the rights of another not stated in *N.J.S.A.* 2A:14–2. . . ." In separating "injury to the person" from "tortious injury to the rights of another," the Legislature essentially distinguished personal injuries involving physical or emotional harm from those involving economic harm. Accordingly, courts have viewed "tortious injury to the rights of another" as applying primarily to actions for economic loss.
>
> [*Id.* at 291–92, 627 *A.*2d 654 (citations omitted).]

The Court concluded that since the injuries set forth by statute are primarily physical or emotional injuries, the two year statute of limitations should govern those actions. *Id.* at 292, 627 *A.*2d 654. This conclusion was reached with full recognition that the LAD prescribed a 180–day limitations period for proceedings before the Division of Civil Rights. *Id.* at 289–90, 627 *A.*2d 654. The Court noted that

> a two-year statute more closely approximates the 180–day period of limitations provided by the Legislature for the filing of claims with the Division on Civil Rights. To this extent, our decision further complies with public policy as declared by the Legislature. That body remains free, if it is so inclined, to provide a separate statute of limitations with a different period of limitations for a civil action based on a discrimination claim.
>
> [*Id.* at 294–95, 627 *A.*2d 654.]

Accordingly, the Court held that the two year statute of limitations should apply to civil LAD actions.

Here, we are called upon to determine the appropriate limitations period for a civil claim that is based on the statutory scheme of the Workers' Compensation Act. In both the LAD and the Act, the limitations periods established apply only to claims filed with the administrative agency. *See N.J.S.A.* 10:5–18 and 34:15–41. Actions filed in the Superior Court are permitted under both the LAD and the Act, although neither statutory enactment defines a limitations period for the civil action. *See Montells, supra,* 133 *N.J.* at 285, 627 *A.*2d 654; *Lally v. Copygraphics,* 85 *N.J.* 668, 428 *A.*2d 1317 (1981), *aff'g,* 173 *N.J.Super.* 162, 413 *A.*2d 960 (App.Div. 1980). We believe that damages in a civil action for retaliatory

discharge may be of the type typically prayed for in personal injury tort actions. *See Restatement (Second) of Torts* §§ 903, 908 (1979); *Montells, supra,* 133 *N.J.* at 291–92, 627 *A.*2d 654. This causes us to conclude the two year limitation of *N.J.S.A.* 2A:14–2 should also apply to all civil actions for damages related to retaliatory discharge under the Act. As plaintiff did not file his claim for retaliatory discharge until more than two years after his termination, Count Four of the complaint must be dismissed as time barred.

We have considered whether the six year statute of limitations of *N.J.S.A.* 2A:14–1, governing contracts and any "tortious injury to the rights of another not stated in 2A:14–2," should apply under the circumstances of the present case, where plaintiff has limited his claim to only compensatory and punitive damages. Plaintiff, however, had the right to make a claim for physical and emotional harm stemming from the retaliatory discharge. The primary reason the two year statute of limitations of *N.J.S.A.* 2A:14–2 was applied to the civil LAD claims was because the cause of action supports a claim for injuries to the person. Other plaintiffs who allege retaliatory discharge under *N.J.S.A.* 34:15–39.1 may claim damages in the form of physical, emotional or psychiatric injury, in which case a two year limitations period would apply. *Montells, supra,* 133 *N.J.* at 291–92, 627 *A.*2d 654. Moreover, the two year limitations period under *N.J.S.A.* 2A:14–2 provides for greater efficiency in the prosecution of these claims. *Id.* at 292–93, 627 *A.*2d 654. We reject the proposition that by limiting a claim to only economic loss, a plaintiff may avoid the two year statute of limitations that is more appropriate to the nature of the cause of action.

We, therefore, reverse the denial of summary judgment as to Mobil R & D and we remand for entry of an appropriate order of dismissal of the complaint.