771 A.2d 1187

**A–119 September Term 1999.**

RAYMOND MCGROGAN AND PAULINE MCGROGAN, PLAIN-TIFFS–APPELLANTS, v. PETER W. TILL, AN ATTORNEY AT LAW OF THE STATE OF NEW JERSEY; ANDREW J. GOLD-STEIN, ESQ., AN ATTORNEY AT LAW OF THE STATE OF NEW JERSEY; ALLYN Z. LITE, ESQ., AN ATTORNEY AT LAW OF THE STATE OF NEW JERSEY AND THE FIRM OF GOLD-STEIN LITE & DEPALMA, LLC SUCCESSOR FIRM OF GOLD-STEIN, TILL, LITE & REIKEN, DEFENDANTS–RESPON-DENTS,SAMUEL N. REIKEN, ESQ., AN ATTORNEY AT LAW OF THE STATE OF NEW JERSEY, DEFENDANT.

Argued January 2, 2001—Decided May 24, 2001.

*Hilton L. Stein* argued the cause for appellants (*Stein, Thyne, LaGrotta, Roper & Twardowsky,* attorneys; *Diane M. Acciavatti,* on the brief).

*Thomas G. Roth* argued the cause for respondent *Peter W. Till* and *Bruce D. Greenberg* argued the cause for respondents *Allyn Z. Lite* and Goldstein Lite & DePalma, LLC (*Roth & Fettweis* and *Lite DePalma Greenberg & Rivas,* attorneys; *Louise Arkel,* on the brief).

The opinion of the Court was delivered by

LaVECCHIA, J.

This case raises the question whether the shorter two-year statute of limitations under *N.J.S.A.* 2A:14–2, instead of the six-year limitations period under *N.J.S.A.* 2A:14–1 usually applied to legal-malpractice actions, should pertain to a claim of legal malpractice allegedly committed by defense counsel in the context of a criminal prosecution. The Appellate Division raised the question *sua sponte.* On this record, as the Appellate Division found, it matters not which statute of limitations applies because under either a two-year or six-year period, plaintiff's action was untimely. *McGrogan v. Till,* 327 *N.J.Super.* 595, 603, 744 *A.*2d 255 (App.Div.2000). The Appellate Division nonetheless addressed the question whether the shorter statute of limitations should apply. The court commented that legal malpractice occurring in the context of a criminal prosecution causes primarily personal injury; economic injuries are "incidental to and flow from the personal injury caused by a criminal prosecution, including disrepute in the community." *Id.* at 604–05, 744 *A.*2d 255. Citing to *Montells v. Haynes,* 133 *N.J.* 282, 627 *A.*2d 654 (1993), for the proposition that the nature of the injury is determinative of which statute of limitations applies, the Appellate Division held that the two-year limitations period in *N.J.S.A.* 2A:14–2 for "injury to the person" should govern. *McGrogan, supra,* 327 *N.J.Super.* at 603, 744 *A.*2d 255.

We granted certification, 165 *N.J.* 132, 754 *A.*2d 1209 (2000), and now affirm the judgment of the Appellate Division substantially for the reasons expressed in the opinion below except as modified in respect of the applicable statute of limitations. We hold that a single statute of limitations controls the timeliness of all legal-malpractice actions, irrespective of the specific injuries that are asserted. We hold further that the six-year limitations period set forth in *N.J.S.A.* 2A:14–1, which has applied heretofore to claims of legal malpractice, continues to govern those actions.

I.

Sometime prior to 1989, plaintiff Raymond McGrogan retained defendant Peter W. Till to represent him in connection with a criminal investigation into charges that he, while a member of the Wayne Township Planning Board, conspired with other Wayne Township officials to extort money from developers. On February 2, 1989, McGrogan was indicted and charged with one count of extortion and three counts of misprision of a felony. A superseding indictment filed on April 6, 1989, charged McGrogan with six counts of extortion. On April 26, 1989, the federal trial court granted Till's application to be relieved as counsel and entered an order appointing a federal public defender as McGrogan's new counsel.

McGrogan entered into a written plea agreement with the Department of Justice dated December 4, 1989. McGrogan agreed to plead guilty to count three of the superseding indictment and to cooperate with the government's investigation in exchange for dismissal of the remaining charges. Count three charged that McGrogan conspired with the mayor of Wayne Township and another member of the planning board to extort money from a joint venture constructing residential apartment buildings. McGrogan admitted that he received a bribe of $10,000 from the joint venture, portions of which he allocated to the mayor and the planning-board member. Sentencing was adjourned be-

cause McGrogan was cooperating with the government in securing evidence against others.

In a letter dated March 22, 1991, McGrogan wrote to the federal trial court concerning a civil complaint Wayne Township had filed against McGrogan and others. In that letter, McGrogan complained that Till had not performed legal services commensurate with his fees, that Till had prevented McGrogan from cooperating with the government, and that the government would not have indicted McGrogan if he had cooperated at an early stage of the investigation. In January 1992, the court sentenced McGrogan to an eighteen-month prison term on condition that he serve four months in a halfway house. The remainder of the term was suspended, and he was given a probationary period of five years. McGrogan also was required to perform community service and pay a fine.

On September 2, 1997, McGrogan and his wife filed a seven-count complaint in State court against Till and his law firm, alleging that Till committed legal malpractice. The complaint's contentions centered on Till's alleged failure to inform McGrogan of available opportunities for immunity and cooperation with investigating authorities that caused McGrogan to be indicted and incarcerated, incur a criminal record, and sustain economic loss and emotional pain. Till moved for summary judgment, asserting that the six-year statute of limitations governing actions for legal malpractice caused the complaint to be time barred. The trial court granted summary judgment, holding that the action filed in September 1997 was time barred because the six-year statute of limitations governed McGrogan's legal-malpractice action and the limitations period began to run no later than March 22, 1991, when McGrogan revealed his knowledge of fault in writing the letter to the sentencing court complaining of Till's representation.

The Appellate Division then affirmed the trial court's judgment insofar as it ruled the legal-malpractice action time barred. *McGrogan, supra,* 327 *N.J.Super.* at 598, 744 *A.*2d 255. We affirm that judgment for the sound reasons expressed by the

Appellate Division in its decision below, holding that the six-year limitation period began to run no later than March 22, 1991 and that therefore plaintiff's suit was time-barred by *N.J.S.A.* 2A:14–1. The Appellate Division, however, additionally concluded, "as an alternative ground for [its] affirmance of the judgment, that the two-year limitations period applies." *Id.* at 603, 744 A.2d 255.

## II.

### A.

■ For more than twenty-five years, an uncontested principle of New Jersey's decisional law has been that the six-year statute of limitations of *N.J.S.A.* 2A:14–1 applies to legal-malpractice actions. *Olds v. Donnelly,* 150 *N.J.* 424, 440, 696 A.2d 633 (1997) (noting that plaintiff filed his legal-malpractice suit "well within the six-year limitations period prescribed by *N.J.S.A.* 2A:14–1"); *Grunwald v. Bronkesh,* 131 *N.J.* 483, 487–88, 621 A.2d 459 (1993) (discussing accrual of legal-malpractice action in relation to six-year limitations period); *Grunwald v. Bronkesh,* 254 *N.J.Super.* 530, 534, 604 A.2d 126 (App.Div.1992) (commenting that "six-year limitations period applies to claims for legal malpractice"), *rev'd on other grounds,* 131 *N.J.* 483, 621 A.2d 459 (1993); *Mant v. Gillespie,* 189 *N.J.Super.* 368, 372, 460 A.2d 172 (App.Div.1983) (same); *Carney v. Finn,* 145 *N.J.Super.* 234, 236, 367 A.2d 458 (App.Div.1976) (determining that six-year statute applies to "assertion that an attorney engaged for particular purpose was negligent in the handling of it, resulting in pecuniary loss to appellant"); *Aykan v. Goldzweig,* 238 *N.J.Super.* 389, 390, 569 A.2d 905 (Law Div.1989) (noting agreement that six-year statute of limitations applies to legal-malpractice action); *Fuschetti v. Bierman,* 128 *N.J.Super.* 290, 294, 319 A.2d 781 (Law Div.1974) (finding six-year limitations period applicable to legal-malpractice action arising out of attorney's alleged failure to bring personal-injury action on behalf of client).

The bedrock nature of that principle for practitioners is evidenced by the Practising Law Institute's unqualified instruction: "In New Jersey, the statute of limitations for legal malpractice claims is 6 years." Charles W. Stotter, *Legal Malpractice in New Jersey: Some Basic Principles, the Affidavit of Merit and Recent Developments, in Legal Malpractice: Techniques to Avoid Liability 1999*, at 276 (PLI Litig. & Admin. Practice Course Handbook Series No. 003Q, 1999). That black-letter law is stated in the context of informing practitioners of methods of avoiding malpractice liability. In that risk-averse context, the omission of any mention of the possibility that the shorter two-year limitations period might apply to legal-malpractice actions is especially significant. The statement conveys a sense of settled expectations on the issue of the statute of limitations for legal-malpractice actions. Indeed, until the issue arose in this matter, no published decision in New Jersey had held that legal-malpractice actions have differing limitations periods that are dependent on the setting in which the alleged malpractice arose. The court below so held based on its understanding of the analysis required by this Court's decision in *Montells v. Haynes, supra*.

### B.

In 1993, the Court in *Montells v. Haynes, supra*, was compelled to bring to an end an ongoing disagreement within the Appellate Division, as well as within the federal courts, concerning whether the two-year statute of limitations in *N.J.S.A.* 2A:14–2 or the six-year statute of limitations in *N.J.S.A.* 2A:14–1 applied to actions brought under the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to 42.

The Court first considered whether a single statute of limitations should apply to all LAD claims, no matter how characterized. *Montells, supra*, 133 *N.J.* at 289, 627 *A*.2d 654. In addressing that question, the Court reasoned that a single statute of limitations generates predictability of results and uniformity of application, reduces unnecessary resource- and time-consuming litigation

over a collateral issue, and promotes efficiency through the reduction in confusion in respect of the applicable statute of limitations. *Id.* at 290–91, 627 *A*.2d 654. It concluded that a single statute of limitations should apply to all LAD actions. *Id.* at 291, 627 *A*.2d 654.

The Court then considered which statute of limitations was appropriate for all LAD claims. *Id.* at 291–95, 627 *A*.2d 654. That determination, the Court said, turned on "the nature of the injury, not the underlying legal theory of the claim." *Id.* at 291, 627 *A*.2d 654. The Court's focus on the "nature of the injury" was not centered on the gravamen of an individual complaint, but on the typical injuries in LAD claims generally. *Id.* at 291–92, 627 *A*.2d 654. The question then became whether those typical injuries under LAD are "more like" an "injury to the person" subject to the two-year statutory limitations period of *N.J.S.A.* 2A:14–2, or more like a "tortious injury to the rights of another" subject to the six-year statutory limitations period of *N.J.S.A.* 2A:14–1. *Id.* at 292, 627 *A*.2d 654. The Court analyzed the types of injuries each limitations period governs:

> In separating "injury to the person" from "tortious injury to the rights of another," the Legislature essentially distinguished personal injuries involving physical or emotional harm from those involving economic harm. Accordingly, courts have viewed "tortious injury to the rights of another" as applying primarily to actions for economic loss. *See, e.g., Grunwald v. Bronkesh,* 254 *N.J.Super.* 530, 534, 604 *A*.2d 126, *rev'd on other grounds,* 131 *N.J.* 483, 621 *A*.2d 459 (1993) (legal malpractice is tortious injury to rights of another)[.]
>
> [*Id.* at 291–92, 627 *A*.2d 654.]

The Court noted that at common law the two-year personal-injury statute of limitations would govern the preponderating physical or emotional injuries that typically occur under LAD violations and concluded that "the statute of limitations for personal-injury claims more closely comports with the purpose of LAD." *Montells, supra,* 133 *N.J.* at 292, 627 *A*.2d 654. Notwithstanding that the LAD also compensated economic losses that otherwise would be governed by the six-year limitations period, the Court focused on the law's central purpose, stating that "[a]lthough LAD ... vindicates economic rights and some rights that sound in contract, the

statute strikes directly at conduct that injures the personhood of another. A discrimination claim cuts most deeply at the personal level." *Id.* at 293, 627 *A*.2d 654.

Although the analysis in *Montells* arose in the context of a statutory cause of action that did not include its own limitations period, and not in a common-law cause of action, its reasoning has been applied in the latter setting. The Appellate Division adopted the analytical framework of *Montells* in *Labree v. Mobil Oil Corp.,* 300 *N.J.Super.* 234, 692 *A*.2d 540 (App.Div.1997), to determine whether the two-year or six-year limitations period should apply to retaliatory discharge claims. The court concluded that the two-year limitations period applies to all civil actions for damages for retaliatory discharge because "damages in a civil action for retaliatory discharge may be of the type *typically* prayed for in personal injury tort actions." *Id.* at 243–44, 692 *A*.2d 540 (emphasis added). The plaintiff in *Labree* limited his claim to compensatory and punitive damages only, but the court nevertheless applied the two-year period because the plaintiff "had the right to make a claim for physical and emotional harm stemming from the retaliatory discharge." *Id.* at 244, 692 *A*.2d 540. That the plaintiff had not alleged physical or emotional injuries in his complaint was unimportant; what mattered was that other plaintiffs alleging retaliatory discharge likely "may claim damages in the form of physical, emotional or psychiatric harm, in which case a two year limitations would apply." *Ibid.* Relying on the analysis in *Montells,* the Appellate Division in *Labree* commented that "[t]he primary reason the two year statute of limitations ... was applied to the civil LAD claims was because the cause of action supports a claim for injuries to the person." *Ibid.* The court concluded that, even when a plaintiff limits a retaliatory discharge claim to economic loss, the two-year limitations period applies because that period "is more appropriate to the nature of the cause of action." *Ibid.*

The holdings in *Montells* and *Labree* recognize that in the analysis of which statute of limitations period should apply to a

cause of action, the concept of "nature of the injury" is not to be subjected to a complaint-specific inquiry. The "nature of the injury" is used to determine the "nature of the cause of action" or the general characterization of that class of claims in the aggregate. That analysis precedes resolution of the question of which statute of limitations applies to a type of cause of action, and does not contemplate an analysis of the specific complaint and the injuries it happens to allege. *See, e.g., Rumbauskas v. Cantor,* 138 *N.J.* 173, 177, 183, 649 *A.*2d 853 (1994) (holding that two-year limitations period applies to cause of action for intrusion on seclusion based on nature of tortious conduct such as stalkings, surveillance, harassment, and threats of violence, notwithstanding that plaintiff limited injury claim to economic loss and did not seek damages for physical or emotional injuries); *Canessa v. J.I. Kislak, Inc.,* 97 *N.J.Super.* 327, 332, 235 *A.*2d 62 (Law Div.1967) (holding that six-year statute of limitations applies to invasion-of-privacy action, notwithstanding plaintiffs' allegations of personal injuries to their "good name, fame and credit, exposure to public ridicule, and the suffering of mental distress"); *Kearney v. Mallon Suburban Motors, Inc.,* 23 *N.J. Misc.* 83, 88, 41 *A.*2d 274 (Essex Cir. Ct.1945) (holding that "gist" of malicious-prosecution action is injury to personal rights, not personal injuries, because "[s]ubsequent arrest and imprisonment are matters of damage but not necessary to be sustained in order to give right to the action of malicious prosecution").

*Montells* thus outlined an approach designed to promote predictability and uniformity through the determination of a single statute of limitations period for a cause of action where a limitation period had not existed before, namely LAD actions. It relied on established precedent for the principle that litigation should not turn on the complaint-specific legal theories that plaintiffs plead, but rather on the nature of the injuries generally identified with the specific cause of action. *Montells, supra,* 133 *N.J.* at 291, 627 *A.*2d 654 (citing *Heavner v. Uniroyal, Inc.,* 63 *N.J.* 130, 145, 305 *A.*2d 412 (1973); *Burns v. Bethlehem Steel Co.,* 20 *N.J.* 37, 42, 118 *A.*2d 544 (1955)). *Montells* did not suggest that different statutes

of limitations should apply within a category of action depending on the precise injury alleged in a specific case, and *Montells* did not signal a need to revisit previously established holdings concerning the pertinent applicable statute of limitations. *Montells,* in context, involved application of settled principles to an open question.

### III.

Assuming that there is a reason to revisit the question of whether the six-year statute of limitations should apply to a legal-malpractice action, the question should be analyzed as in *Montells* and the conclusion should apply to all legal-malpractice actions across the board. Different limitations periods should not be applied in different cases dependent on the specific injury pled. Thus, whether a plaintiff employs an underlying theory of contract or tort in a legal-malpractice action is irrelevant to the statute of limitations inquiry; what matters is that the gravamen of legal-malpractice actions is injury to the rights of another, not personal injury. *See, e.g., Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 *Cal.*3d 176, 98 *Cal.Rptr.* 837, 491 *P.*2d 421, 424 (1971) (noting that legal malpractice "usually causes damage to intangible property interests"); *Higa v. Mirikitani,* 55 *Haw.* 167, 517 *P.*2d 1, 4 (1973) (commenting that "virtually all claims for legal malpractice [concern] a non-physical injury to an intangible interest of the plaintiff"); *Acharya v. Carroll,* 152 *Wis.*2d 330, 448 *N.W.*2d 275, 279 (Ct.App.1989) (" 'With few exceptions, ... the courts have concluded that legal malpractice does not cause personal injuries and, therefore, is not governed by a personal injury tort statute of limitations.' ") (quoting 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 18.6, at 75–76 (3d ed.1989)). Decades of unbroken precedent in New Jersey applying the six-year limitations period to legal-malpractice actions illustrate that the essence of the typical legal-malpractice claim is "tortious injury to the rights of another."

 Legal-malpractice suits are grounded in the tort of negligence. *Grunwald, supra,* 131 *N.J.* at 492, 621 *A.*2d 459; *Lieberman v. Employers Ins. of Wausau,* 84 *N.J.* 325, 342, 419 *A.*2d 417 (1980). The elements of a cause of action for legal malpractice are (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff. *Conklin v. Hannoch Weisman,* 145 *N.J.* 395, 416, 678 *A.*2d 1060 (1996). At the most fundamental level, the legal-malpractice action provides a remedy for negligent professional performance. 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 1.1, at 3 (3d ed.1989). As noted, it is the injurious conduct that engenders the alleged cause of action and then serves as the analytical trigger for determining the pertinent limitations period; injuries resulting from that conduct are a means of informing that inquiry. *See, e.g., Rumbauskas, supra,* 138 *N.J.* at 182, 649 *A.*2d 853 (finding two-year limitations period applicable to intrusion-on-seclusion action because defendant's threatening and harassing "conduct struck directly at the personhood" of plaintiff, notwithstanding that plaintiff claimed only economic injuries); *Montells, supra,* 133 *N.J.* at 293, 627 *A.*2d 654 (determining that two-year statute of limitations applies to all LAD actions because "the statute strikes directly at conduct that injures the personhood of another"); *Earl v. Winne,* 14 *N.J.* 119, 128, 101 *A.*2d 535 (1953) (concluding that two-year limitations period governs false-imprisonment actions because false imprisonment is conduct akin at common law to assault and battery).

The necessary emphasis on an attorney's negligent conduct is evident from *Carney v. Finn, supra,* 145 *N.J.Super.* at 236, 367 *A.*2d 458, in which the Appellate Division concluded that a legal-malpractice action was not "a personal injury claim but rather an assertion that an attorney engaged for a particular purpose was negligent in the handling of it, resulting in pecuniary loss to appellant." The dispositive concept in *Carney* for purposes of concluding that "tortious injury to the rights of another" had occurred was not, however, the resultant pecuniary loss, but

rather that an attorney was charged with the negligent conduct of mishandling a professional matter. The underlying injury giving rise to the legal-malpractice action was the breach of a duty as manifested in the attorney's negligent performance. Resultant economic loss to the client was not the determinative point of analysis for the *Carney* court, which cited for support to *Hillhouse v. McDowell*, 219 *Tenn.* 362, 410 *S.W.*2d 162, 166 (1966). In *Hillhouse*, the court found that legal malpractice is a cause of action in which "the injury is not to the person but the negligent failure of the attorney to perform" his or her professional obligation. *Ibid.* Myriad consequences may flow from the negligent professional conduct, but nevertheless "[l]egally-cognizable damages occur when a plaintiff detrimentally relies on the negligent advice of an attorney." *Grunwald, supra,* 131 *N.J.* at 495, 621 *A.*2d 459.

An underlying purpose of statutes of limitations is to reduce uncertainty concerning the timeliness of a cause of action. Tyler T. Ochoa & Andrew J. Wistrich, *The Puzzling Purposes of Statutes of Limitation,* 28 *Pac. L.J.* 453, 466 (1997). Statutes of limitation cannot promote greater certainty when decisions inject ambiguity into their application. The decision in *Montells* does not suggest a case-by-case analysis, and there are sound reasons for avoiding the pitfalls associated with that approach, as stated by the Supreme Court of Hawaii:

> This court should avoid applications of the law which lead to different substantive results based upon distinctions having their source solely in the niceties of pleading and not in the underlying realities. We agree with the reasoning of Justice Tobriner, writing for a unanimous California Supreme Court in *Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra,* that regardless of the nomenclature used by the plaintiff in a legal malpractice suit, all such actions should be governed by the same statute of limitations.
>
> [*Higa, supra,* 517 *P.*2d at 4.]

All legal-malpractice actions should be governed by the same statute of limitations. We hold that that limitations period for all legal malpractice actions is the six-year statute of limitations contained in *N.J.S.A.* 2A:14–1 for actions involving tortious injury to the rights of another.

## IV.

The judgment of the Appellate Division is affirmed, as modified.

*For Affirmance as Modified*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.