Catherine O'BOYLE; Martin E. O'Boyle, individually and a General Partner in New Midland Plaza Associates, a Tennessee General Partnership, and as General Partner in Commerce Partnership No. 1147, a Florida General Partnership, and as Partnership No. 171, a Florida General Partnership, Appellants

v.

David L. BRAVERMAN, Attorney Pro Se; Braverman & Kaskey, a New Jersey and Pennsylvania Professional Corporation, formerly known as and doing business as Braverman, Daniels, Kaskey, Ltd.; Fellheimer, Braverman & Kaskey; John Doe Attorneys 1–5; XYZ Entities 6–10; (ficticious names), jointly, severally and individually.

No. 08–3865.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) June 12, 2009.

Filed: July 15, 2009.

Louis M. Barbone, Esq., Jacobs & Barbone, Atlantic City, NJ, for Appellants.

David L. Braverman, Richard S. Julie, Esq., Braverman Kaskey, Philadelphia, PA, for Appellee.

Before: McKEE, HARDIMAN, and VAN ANTWERPEN, Circuit Judges.

VAN ANTWERPEN, Circuit Judge.

Appellants Catherine and Martin O'Boyle were general partners in New Midland Plaza Associates ("New Midland"), a Tennessee partnership; they were also partners in two Florida partnerships, both of which had ownership interests in New Midland.[1] Appellants re-

---

1. Either directly or through the Florida part-    nerships, Martin O'Boyle had a 99.87% inter-

tained Appellee Braverman and his former law firm to represent New Midland in its dispute with a mortgage lender. Braverman filed suit on behalf of Appellants in Tennessee court in April 1999. In the current case, which was filed in New Jersey court on December 14, 2007, and was subsequently removed to federal court, Appellants claim that Braverman failed to use due care in connection with the Tennessee litigation and that his malpractice resulted in the dismissal of the Tennessee case and in the Tennessee court levying sanctions on Appellants.

Braverman moved to dismiss the action and the District Court granted Braverman's motion under Federal Rule of Civil Procedure 12(b)(6). In dismissing the case, the District Court applied New Jersey choice of law principles and concluded that Tennessee law applied. It ruled that, because Appellees filed suit on December 14, 2007, and their injuries were suffered no later than November 2, 2006, the action was barred under Tennessee's one year statute of limitations for legal malpractice claims. For the following reasons, we agree and will affirm the decision of the District Court.

## I.

The District Court had jurisdiction under 28 U.S.C. § 1332. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. When considering a district court's grant of a motion to dismiss

under Rule 12(b)(6) we exercise plenary review and accept all factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff. *Umland v. PLANCO Financial Services, Inc.,* 542 F.3d 59, 64 (3d Cir.2008). In doing so, we "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* (quotation marks omitted).

## II.

■ The District Court, in deciding this case, considered Tennessee court documents for the purpose of determining the dates on which the Tennessee litigation was dismissed and on which the Tennessee court levied sanctions on Appellants. Appellants argue that, as it decided this case in the context of a Rule 12(b)(6) motion, the District Court's dismissal on statute of limitations grounds was improperly based on public records that were outside the face of the complaint. Similar arguments have been rejected by this and other Courts of Appeals.[2] This Court has held that,

> [t]o resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.

Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the exis-

---

est in New Midland and Catherine O'Boyle owned the remaining 0.13%.

**2.** *See Staehr v. Hartford Financial Services Group, Inc.,* 547 F.3d 406, 425 (2d Cir.2008) ("Although the general rule is that a district court may not look outside the complaint and the documents attached thereto in ruling on a Rule 12(b) motion to dismiss, we have acknowledged that the court may also consider matters of which judicial notice may be taken.... Dismissal under Fed.R.Civ.P. 12(b)(6)

is appropriate when a defendant raises a statutory bar as an affirmative defense and it is clear from the face of the complaint, *and matters of which the court may take judicial notice,* that the plaintiff's claims are barred as a matter of law." (internal quotation marks, alteration marks, and citations omitted; emphasis in original)); *accord Levy v. Ohl,* 477 F.3d 988, 991–92 (8th Cir.2007); *Rodi v. Southern New England School of Law,* 389 F.3d 5, 18–19 (1st Cir.2004).

tence of the opinion, which is not subject to reasonable dispute over its authenticity.

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426–27 (3d Cir.1999) (citations omitted). Accordingly, it was not improper for the District Court to take judicial notice of Tennessee court documents in deciding the Rule 12(b)(6) motion at issue.

## III.

■ New Jersey's choice of law rules apply to this case.[3] Appellants argue that the District Court's application of New Jersey's choice of law rules was flawed in that the court erred in finding an actual conflict between the New Jersey and Tennessee statutes of limitations and that, even if a conflict exists, the court erred in concluding that Tennessee law applied. We disagree, and for the following reasons, will affirm the District Court's order dismissing this case.

Appellants maintain that their action is timely under both the New Jersey and Tennessee statutes of limitations. We disagree. Tennessee's statute of limitations for legal malpractice claims is one year from the time the cause of action accrues. Tenn.Code Ann. § 28–3–104(a)(2). New Jersey, on the other hand, allows six years from the accrual of the cause of action. *McGrogan v. Till*, 167 N.J. 414, 771 A.2d 1187, 1194 (2001) (holding that legal malpractice actions are governed by the six year statute of limitations contained in N.J.S.A. 2A:14–1). Under the law of both states, a legal malpractice action accrues when the plaintiff suffers actual damage and discovers, or through the use of rea-

sonable diligence should have discovered, that the defendant-attorney's conduct caused this damage. *See John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn.1998); *Vastano v. Algeier*, 178 N.J. 230, 837 A.2d 1081, 1084 (2003). There is no dispute that the current action would be timely under New Jersey law.

Tennessee law holds that "[i]t is a court's judgment that decrees the loss of a right or remedy or imposes a legal liability. Thus, when a judgment is entered, a 'legally cognizable injury' occurs." *Cherry v. Williams*, 36 S.W.3d 78, 85 (Tenn.Ct. App.2000); *see also Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn.1995) (rejecting the argument that the statute of limitations for legal malpractice should be tolled pending the appeal of the underlying suit). We thus reject Appellants' argument that their cause of action accrued on December 27, 2006, the date on which they settled the appeal in the Tennessee action. As noted by the District Court,

> [t]he only injuries alleged in the Complaint are the dismissal of the Tennessee Litigation and the imposition of sanctions against Plaintiffs. According to public records related to the Tennessee Litigation, these sanctions were first imposed on September 27, 2005. The state court filed its final decree dismissing the Tennessee Litigation on December 14, 2005. Then, on November 2, 2006, additional sanctions were imposed.... Thus, this action accrued no later than November 2006.

Appellants filed their Complaint on December 14, 2007. The District Court correctly held that, even giving Appellants the benefit of the latest possible date of accru-

**3.** In a diversity action, a federal court "must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir.2007)

(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). The parties do not dispute the applicability of New Jersey's choice of law rules.

al—November 2, 2006—the current action was not timely under Tennessee's one year statute of limitations.

Having established a conflict between the application of New Jersey's and Tennessee's statutes of limitations to this case, we must determine which one to apply. The New Jersey Supreme Court "abandoned the 'mechanical rule' that the New Jersey statute of limitations still applied in cases where a foreign substantive law was chosen, in an attempt to discourage forum shopping. Instead, New Jersey 'borrows' the statute of limitations of the state whose substantive law applies to the case." *Warriner v. Stanton,* 475 F.3d 497, 500 n. 2 (3d Cir.2007) (citing *Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 305 A.2d 412, 418 (1973)). Thus, we proceed to determine whether New Jersey's or Tennessee's substantive law applies.

During the pendency of this appeal, the New Jersey Supreme Court altered its framework for resolving conflict of law disputes arising out of tort claims.[4] *P.V. v. Camp Jaycee,* 197 N.J. 132, 962 A.2d 453, 460 (2008). In *Camp Jaycee,* the Court expressly adopted the Restatement (Second) of Conflict of Laws's most significant relationship test. *Id.* Under this test, we apply the "general principle" of § 145, as viewed through the "prism" of § 6. *See id.* at 458–59. Section 145 states that

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[5]

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971).

The District Court decided this case using the governmental interest analysis in effect before *Camp Jaycee.* According to the New Jersey Supreme Court, the " 'governmental-interest test is substantially similar to the most-significant-relation-

---

**4.** While Appellants advance their legal malpractice claim under both tort and contract theories, "whether a plaintiff employs an underlying theory of contract or tort in a legal-malpractice action is irrelevant to the statute of limitations inquiry.... Decades of unbroken precedent in New Jersey ... illustrate that the essence of the typical legal-malpractice claim is 'tortious injury to the rights of another.' " *McGrogan v. Till,* 167 N.J. 414, 771 A.2d 1187, 1192–93 (2001) (citations omitted).

**5.** Section 6 states that, in the absence of a statutory directive on choice of law,

the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

ship test,'" as it "embodies all of the elements of the governmental interest test plus a series of other factors deemed worthy of consideration." *Camp Jaycee*, 962 A.2d at 459 n. 4 & 460 (quoting *Fu v. Fu*, 160 N.J. 108, 733 A.2d 1133, 1152 (1999) (Pollock, J., dissenting)). We thus need not belabor our discussion of the above factors, which were addressed in detail by the District Court.

The alleged injury at issue is the dismissal of the Tennessee suit and the Tennessee court's imposition of sanctions. Both this injury and the conduct that caused the injury—Braverman's allegedly improper handling of the Tennessee litigation—occurred in Tennessee. Appellees' involvement in the Tennessee lawsuit arose out of their status as general partners in New Midland, a Tennessee General Partnership with its principal place of business in Tennessee. As the Appellants hired Braverman "for the purpose of filing a lawsuit . . . in Tennessee," the parties' relationship is centered in Tennessee. The only factors weighing in favor of the application of New Jersey law are Catherine O'Boyle's New Jersey citizenship and the fact that Braverman is a member of the New Jersey bar. These factors are insufficient to overcome the fact that Tennessee has the most significant relationship to a claim of legal malpractice arising out of litigation that took place in its courts and involved an entity formed under its laws.

For these reasons, we agree with the District Court's discussion of the § 145 factors, conclude that this suit was properly dismissed as time barred under Tennessee's statute of limitations, and will affirm the decision of the District Court.[6]

---

6. We have carefully considered the parties' other arguments and conclude that they are either without merit or moot in light of our statute of limitations decision.