**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2050-18T4

STEFANO J. TOMEO, III,

     Plaintiff-Appellant,

v.

WILLIAM R. EDLESTON,

     Defendant-Respondent.

_____

Submitted March 16, 2020 – Decided March 30, 2020

Before Judge Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Docket No. L-0367-14.

Advokat & Rosenberg, attorney for appellant (Jeffrey M. Advokat, on the brief).

William R. Edleston, respondent pro se.

PER CURIAM

In this legal malpractice case, plaintiff contends his former attorney was negligent in failing to file a home warranty claim on his behalf before the

coverage period expired. The defendant attorney acknowledges he filed the form late, but asserts his client was not harmed by his negligence because the terms of the warranty did not cover plaintiff's claim. The trial court granted summary judgment dismissing the malpractice action. We affirm, as we agree with the trial court that plaintiff's claim was not covered by the warranty.

The pertinent facts and sequence of events are largely undisputed. Plaintiff Stefano J. Tomeo bought a home in Liberty Township in November 2002. At the time of the closing, plaintiff received a limited warranty on the home pursuant to the New Home Warranty and Builders' Registration Act, N.J.S.A. 46:3B-1 to -20. Under the terms of the warranty, the home builder was the warrantor during the first two years of the plan. Thereafter, a risk retention group provided the warranty coverage for years three through ten. The warranty was administered by Residential Warranty Corporation ("RWC"). Notably, as we will discuss, the warranty provides less coverage after years one and two.

In the tenth year of the coverage period in 2012, plaintiff noticed what he described as "faulty workmanship" in his home. In particular, plaintiff discovered leakage through windows, which he alleges caused mold, and damage to sheetrock, walls, and carpeting.

2

About two months before the warranty expired, plaintiff contacted his prepaid legal plan and was referred to defendant, William R. Edleston, Esq. Edleston undertook to represent plaintiff in presenting a claim for damages under the warranty plan to RWC.

As requested, Edleston prepared a warranty claim for plaintiff. However, as Edleston acknowledges, the claim was not received by RWC until late December 2012, after the ten-year warranty period had already expired. RWC denied the claim as untimely.[1]

Plaintiff filed the present malpractice action against Edleston, alleging that he breached applicable standards of care by failing to submit the warranty claim on time. In his effort to establish he was damaged by Edleston's negligence, plaintiff obtained an expert report from Evolution Construction, LLC. The author of the expert report (whose name does not appear on the document) asserts the author has "[thirty] years of experience in the construction industry as well as [being] educated as an Architect and Structural Engineer." The expert inspected plaintiff's home and confirmed the water damage.

---

[1] There is no indication that the denial was contested, and RWC is not a third-party defendant in this case.

A-2050-18T4

Plaintiff's expert report noted, as a general principle, if a home's "vapor barrier system is not installed properly and [lacks] other thermal moisture protections, the home is at risk for damage caused by mold - potentially leading to dry rot – and ultimately a major reconstruction of the home." More specifically with respect to plaintiff's home, the report opined that "[w]ith the amount of water damage that we have seen from onsite inspection, photos and videos and the obvious black mold growth seen on the window sills in the bedrooms shown, [plaintiff's] home is at major risk and needs to be corrected immediately."

Plaintiff's expert was unable to ascertain the full severity and extent of the structural and wood damage until the walls in the home were fully opened. The expert did estimate the cost of repairs to be $227,664.08. The record does not divulge whether plaintiff actually undertook the recommended repairs, or had others perform the work.

After considering the expert report and the parties' other motion submissions, as well as oral argument, the trial court granted defendant's motion for summary judgment. The motion judge, Hon. Thomas C. Miller, issued a fourteen-page written opinion explaining his reasoning.

Judge Miller's ruling was principally based upon two findings. First, he found "the terms of the warranty agreement are clear and unambiguous with regards to the type of damage that is covered during the Year [Three] to Year [Ten] period of time." For those years, the warranty covers "what can be described as 'structural components' only. The alleged improper construction of a vapor barrier system cannot be characterized as a damage to a structural component." Further, the judge determined that "issues that involve water leaks or moisture intrusion are also included within the one[-]year warranty period [in Section F] of the Performance Standards of the policy."

Second, Judge Miller emphasized that plaintiff's expert report did not actually state that plaintiff's house sustained a major structural defect. As the judge wrote, plaintiff's expert "appears to argue that the improper installation of the vapor barrier allowed mold and rot to form, which independently could cause structural damage." Although "that proposition can be theoretically advanced, a closer review of the Evolution report does not indicate that the mold and rot has caused structural damage—but instead [it] only opines that it <u>could</u> cause structural damage." (Emphasis added).

The judge rejected plaintiff's assertion that a representative from RWC orally stated to him that "certain items are covered[,] such as 'physical damage,'

'failure of components,' 'foundation system[s],' etc." The judge declined to rely on this hearsay because it was not supported by a certification in compliance with Rule 1:6-6, and also because the representative's alleged oral interpretation of the warranty contract violated the parol evidence doctrine.

Plaintiff now appeals. He contends the trial court failed to recognize genuine issues of material fact that allegedly would show he had a viable Year Ten warranty claim. In particular, the plaintiff contends triable issues are raised by his expert report, the contents of his submission to RWC, and the alleged hearsay statement of RWC's representative concerning the scope of the warranty coverage. Plaintiff further contends the trial court's ruling is inconsistent with case law, pointing to the Supreme Court's opinion in Weedo v. Stone-E-Brick, Inc., 81 N.J. 233 (1979), and this court's opinion in Cypress Point Condominium Ass'n, Inc. v. Adria Towers, L.L.C., 441 N.J. Super. 369 (App. Div. 2015), which he says favors construing insurance policies in an expansive manner.

We review the trial court's summary judgment ruling de novo, bearing in mind the familiar principles of Rule 4:46-2 and Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995). See also W.J.A. v. D.A., 210 N.J. 229, 237-38 (2012). Having done so, we affirm the grant of summary judgment, substantially

6

for the sound reasons set forth in Judge Miller's December 3, 2018 written opinion. We add several comments.

The elements of a cause of action for legal malpractice are: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." McGrogan v. Till, 167 N.J. 414, 425 (2001) (citing Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996)). Here, the first two elements are apparently satisfied, but plaintiff critically fails to establish the third element of damages proximately caused by the attorney's negligent failure to submit the warranty on time.

We agree with the trial court that plaintiff has not demonstrated that the damages to his home he discovered in Year Ten of the warranty are covered by the terms of the plan. As we have already noted, the plan's coverage is more restrictive in Years Three through Ten. In those latter years, the plan covers only proven "major structural defects," in contrast to the broader coverage in its earlier years.

Specifically, the limited warranty agreement provides coverage for only a one-year duration for "defects due to nonconformity with the limited warranty standards set forth in Section C of this book." Section C(4)(f) is labeled "thermal

and moisture protection," and specifically warrants protection from defects such as "insufficient insulation," "improperly installed louvers and vents that permit penetration of the elements," "leaks resulting in actual trickling of water through the walls or seeping through the floor," and "joints and cracks in exterior wall surfaces and around openings which are not properly caulked to exclude the entry of water."

Further, Section C(4)(g) extends coverage for only one year to "windows which do not operate in conformity with manufacturer's design standards," "all hardware installed on doors and windows which does not operate properly," "storm doors and windows which are installed and do not operate or fit properly to provide the protection for which they are intended," and lastly, "weather[-]stripping and seals . . . around doors and windows."  These are more specific examples of the general deficiencies alleged by plaintiff and his expert.

Pursuant to the plain language of the warranty, such deficiencies are covered during the first year of the plan only.  These items applicable terms of the warranty limiting coverage are consistent with regulations promulgated under the statute. See e.g., N.J.A.C. 5:32-3.2, and -3.5; see also Herman J. Maurer v. Dep't of Cmty. Affairs, CAF 7148-14, initial decision, (Oct. 6, 2014)

(ruling that water infiltration discovered after the first year of the plan was not covered under the terms of the new home warranty program).[2]

Even if, for the sake of discussion, we were to accept plaintiff's theory that the lack of an effective installed vapor barrier was the proximate cause of his damages, the plain language of the policy confines coverage for such water infiltration to the first year of the plan.

Moreover, we agree with Judge Miller that the wording of plaintiff's expert report does not state that faulty workmanship actually caused the water leakage, but instead alludes more generally that "if" a vapor barrier is not installed properly, then structural damage is likely to ensue. Although the report opines that plaintiff's home is "at major risk," it does not explicitly provide the necessary causal support for plaintiff's claim of faulty workmanship. We also note the report is based upon an inspection performed in 2018, several years after the warranty expired.

Plaintiff's arguments for reversal are not aided by Weedo, 81 N.J. at 233, or by Cypress Point, 441 N.J. Super. at 369. Both opinions concern the terms of commercial general liability insurance policies, which are not involved here.

---

[2] This administrative decision is found at http://njlaw.rutgers.edu/collections/ oal/html/initial/caf7148-14_2.html.

Lastly, we concur with the motion judge's observation that the alleged oral representation of RWC's representative about the terms of the coverage are inadmissible against the defendant attorney under the hearsay rules, see N.J.R.E. 801(c) and 802, and also the parol evidence doctrine. See Conway v. 287 Corp. Assocs., 187 N.J. 259, 270 (2006) (authorizing the consideration of parol evidence only where contractual terms are ambiguous). The spoken words of the entity's representative cannot alter the plain meaning of the warranty provisions.

We understand plaintiff's dismay about the condition of his home and also his former attorney's failure to take timely action. Nonetheless, plaintiff has no viable cause of action in this case, and summary judgment was appropriately granted in accordance with the law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2050-18T4