**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2392-15T2

ANTHONY ANGELO,

    Plaintiff-Appellant,

v.

JOEL I. BERGMAN,

    Defendant-Respondent.

_____

        Submitted March 14, 2017 — Decided July 28, 2017

        Before Judges Fisher and Leone (Judge Fisher
        concurring).

        On appeal from Superior Court of New Jersey,
        Law Division, Essex County, Docket No. L-3937-
        13.

        Edward R. Grossi, attorney for appellant.

        Robert G. Ricco, attorney for respondent.

PER CURIAM

    Plaintiff Anthony Angelo appeals the trial court's January

8, 2016 order granting summary judgment in favor of defendant Joel

Bergman, his former attorney.  We affirm.

The parties' statements of undisputed material facts include the following. Plaintiff brought a medical malpractice case against a pain management doctor. Plaintiff was represented by Bergman during the trial, at which Dr. Antonio Aldrete testified as plaintiff's expert witness. In 2011, after three days of trial, plaintiff settled that case for $200,000.

In 2013, plaintiff filed a lawsuit against Bergman, the attorney who negotiated the settlement on his behalf. Plaintiff hired Anthony Ambrosio, an attorney, as an expert to write a report on plaintiff's allegations of legal malpractice. Ambrosio issued his report in December 2014. He was deposed in September 2015.

Based on Ambrosio's deposition, Judge Vicki A. Citrino found Ambrosio rendered a net opinion. The court dismissed plaintiff's legal malpractice claim on summary judgment.

## II.

If "a trial court is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.' Appellate review of the trial court's decisions proceeds in the same sequence[.]" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384-85 (2010)). "On appeal, then, those rulings will be gauged

separately: the evidentiary ruling under an abuse of discretion standard, and the legal conclusions undergirding the summary judgment motion itself on a plenary de novo basis." Estate of Hanges, supra, 202 N.J. at 385. We must hew to those standards of review.

III.

"Legal-malpractice suits are grounded in the tort of negligence." McGrogan v. Till, 167 N.J. 414, 425 (2001). "The elements of a cause of action for legal malpractice are (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." Ibid.

"As in nearly all malpractice cases, plaintiff needed to produce an expert regarding deviation from the appropriate standard." Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 362 (2004). "As 'the duties a lawyer owes to his client are not known by the average juror,' expert testimony must necessarily set forth that duty and explain the breach." Buchanan v. Leonard, 428 N.J. Super. 277, 288 (App. Div. 2012) (quoting Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64, 78 (App. Div. 2007)), certif. denied, 213 N.J. 534 (2013). "[W]ithout expert testimony, a jury simply does not have the knowledge, training,

or experience to decide the settlement value of plaintiff's claim." Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 104 (App. Div. 2001) (quoting Kelly v. Berlin, 300 N.J. Super. 256, 269 (App. Div. 1997)).

"The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Townsend, supra, 221 N.J. at 53-54 (citation omitted). "The net opinion rule is succinctly defined as 'a prohibition against speculative testimony.'" Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013) (citation omitted). "That is, an expert's bare opinion that has no support in factual evidence or similar data is a mere net opinion which is not admissible and may not be considered." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011); see Townsend, supra, 221 N.J. at 57-59.

A.

Plaintiff argued Bergman committed legal malpractice in valuing the case at $200,000. Plaintiff retained Ambrosio as his expert to show a breach of the standard of care for legal malpractice. In his expert report, Ambrosio opined: "Bergman was negligent in advising Plaintiff to settle his case for $200,000. From a review of other jury verdicts and a reasonable assessment

of the case based on my experience, a reasonable settlement value of this case was $500,000."

However, in his deposition, Ambrosio conceded defendant's considered opinion of "[$]200,000 and take this and go home is a judgement call and is not malpractice." He also agreed "the real issue of this case" was not "whether [$]200,000 was fair or not."[1]

Thus, Ambrosio "completely abandoned his original opinions concerning [the] deviation from the . . . accepted standard of care" on the valuation issue. Ritondo by Ritondo v. Pekala, 275 N.J. Super. 109, 116 (App. Div.), certif. denied, 139 N.J. 186 (1994). This case is similar to Ritondo. In that medical malpractice action, plaintiff's medical expert, on cross-examination, "effectively retracted" his direct testimony as to the doctor's deviations from the standard of care. Ibid. After reaffirming his original opinions on redirect, the expert again retracted that testimony on re-cross. Id. at 115. We were persuaded "that the value of testimony given by a witness on direct examination may be entirely nullified by admissions on cross-

_____

[1] Ambrosio said that the real issue in this case was "whether or not . . . [plaintiff] was somehow pressure[d] or misinformed into settling." Ambrosio agreed that was "a separate and distinct issue from the monetary valuation of the case." We address that issue in the next section.

examination." Id. at 116. Similarly, Ambrosio's testimony negated his opinions in his report.

Plaintiff cites a portion of the deposition where Ambrosio stated he was not "retracting that portion of [his] expert opinion that alleges malpractice based on an improper valuation of the case at $200,000."[2] However, later in his deposition Ambrosio conceded that "valuation is an art," that you "[c]an't fault" Bergman for "giving his best judgment that this is [plaintiff's] best chance to settle" if that was "his considered opinion," and that his advice to settle for $200,000 was "not malpractice."

Plaintiff argues Bergman recommended the $200,000 settlement because he mistakenly believed the medical malpractice case would be dismissed before it reached the jury. Plaintiff cites Ambrosio's report which stated:

> A reasonably prudent and competent attorney who reviewed Aldrete's trial testimony would conclude that there was no question that this case would reach a jury. Thus, Bergman acted below the applicable standard of care in advising Angelo to settle the case for $200,000, as Bergman has indicated the only reason that he advised Angelo to settle the case [w]as the inability to prove the negligence and malpractice.

---

[2] Ambrosio explained that "if everything [plaintiff] says was true, in terms of his complaints, it would be worth a lot more than $500,000." However, Ambrosio conceded that "maybe Mr. Angelo won't be [b]elieved at trial."

Nonetheless, Ambrosio abandoned the core of that opinion when he admitted in his deposition that a $200,000 settlement was not malpractice.

B.

In his report, Ambrosio stated "an additional element of the Defendant's malpractice is the failure to adequately explain the mechanics of the settlement." In open court in plaintiff's presence, Bergman stated "there's been an agreement as to a High/Low in this case," and "[$]200,000 is the low and [$]500,000 is the high." He stated that he had spoken to plaintiff and gone through the evidence and that they had decided not to proceed further with the case. Counsel and the trial court agreed to enter a judgment of no cause dismissing the case with prejudice.

On March 25, 2011, plaintiff and Bergman signed a General Release explaining that plaintiff was releasing his claims against the doctor and in return he would "receive the amount of $200,000.00." The signed release stated that "the terms of the settlement and this Release have been completely read and explained to [plaintiff] by [Bergman]," that plaintiff "fully understands . . . the terms of the settlement and of this Release," and that he "entered into the settlement and signed this Release voluntarily" and "without any undue influence."

Ambrosio was unaware of this release when he wrote his report.

When confronted with the release in his deposition, Ambrosio testified:

> Q. What is the significance of [plaintiff] entering into a settlement agreement or in this case, a general release, a month after the settlement was entered into in open court?
>
> A. Well, the only way he is going to get any money is to sign this release. So this is, again, an opportunity for him to reject the settlement.
>
> Q. Now, is it significant that he didn't reject the settlement?
>
> A. I am afraid it is. . . . It sort of undercuts his credibility, frankly.
>
>        . . . .
>
> Q. What would — how would his case in this case be different if he had refused to sign that release?
>
>        . . . .
>
> A. He probably would be in a position to move to vacate the settlement, based upon he didn't give proper consent. But that [signature of the release] undercuts any ability to do that.
>
> Q. Does that mean now that, in fact, in reality, he gave consent to Mr. Bergman and wanted to go forward with the settlement?
>        . . . .
>
> A. Yes, that's what that means.

Ambrosio conceded that plaintiff knew he would get $200,000 in the settlement, and that plaintiff knew the settlement would end his medical malpractice case. When asked about plaintiff's claim "he didn't even know the amount of the settlement for six months after it took place," Ambrosio testified he did not "find it credible."[3] Accordingly, Ambrosio in his deposition effectively negated his prior opinion that plaintiff did not understand he was settling his case for $200,000.

Plaintiff argues that what Bergman referred to as "a high-low agreement" was a fraud. We agree the parties did not enter into a true high-low agreement, which is designed to limit the parties' risks from the jury's verdict.[4] Rather, the parties entered into the so-called high-low agreement at the same time as they settled the case for $200,000, so there was no risk from a jury verdict. Despite counsel misrepresenting to the trial judge

---

[3] Ambrosio also admitted it was not malpractice to settle the case in open court in plaintiff's presence without a voir dire of plaintiff or a simultaneous written confirmation of the settlement.

[4] "A high-low agreement is a device used in negligence cases in which a defendant agrees to pay plaintiff a minimum recovery in return for plaintiff's agreement to accept a maximum sum regardless of the outcome of the trial." Benz v. Pires, 269 N.J. Super. 574, 578 (App. Div. 1994). "A high-low agreement protects a plaintiff from the danger of receiving less than the floor amount and protects a defendant from exposure to a judgment higher than the agreed ceiling." Id. at 579.

in the medical malpractice action that the parties had entered into a "high-low agreement," it is undisputed the parties really settled the case for $200,000. It appears the parties characterized their $200,000 settlement as a "high-low agreement" to allow the doctor to pay plaintiff the $200,000 without having to report any malpractice.

We do not endorse the parties' deliberate mislabeling of their medical malpractice settlement. Nonetheless, plaintiff failed to show it breached a duty to him or damaged him. Ambrosio testified there was no "impropriety in reaching a settlement . . . in order to allow the doctor not to have to report" malpractice, adding: "It happens oftentimes. It is a big incentive for settlement." In any event, the so-called high-low agreement did not change the essentials of the settlement for plaintiff — dismissal of his case in return for $200,000 — which Ambrosio conceded plaintiff understood.

Thus, Ambrosio's "negation" in his deposition testimony of the key portions of his report "was a clear and unequivocal withdrawal of his opinion. As a result, [plaintiff was] left

without proof of any deviation of the standard of care, a necessary element of [his] claim." Ritondo, supra, 275 N.J. Super. at 116.[5]

That rendered Ambrosio's report a net opinion which the trial court properly precluded. A reviewing court will overturn a trial court's decision to preclude expert opinion only "'when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (citation omitted). We find no abuse of discretion here.

Thus, Ambrosio did not show a breach of the standard of care in Bergman's advice to settle or his explanation of the mechanics of the settlement. Plaintiff nonetheless argues Ambrosio's references to the Rules of Professional Conduct were sufficient to establish a standard of care. Plaintiff notes that under the ethics rules "[a] lawyer shall abide by a client's decision whether to settle a matter." R.P.C. 1.2(a). Ambrosio also cited ethics

---

[5] Plaintiff notes that Ambrosio filed a certification in opposition to summary judgment claiming that he "neither recanted nor retracted anything." However, "a trial court may reject an affidavit as a sham when it 'contradict[s] patently and sharply' earlier deposition testimony, there is no reasonable explanation offered for the contradiction, and at the time the deposition testimony was elicited, there was no confusion or lack of clarity evident from the record." Hinton v. Meyers, 416 N.J. Super. 141, 150 (App. Div. 2010) (quoting Shelcusky v. Garjulio, 172 N.J. 185, 200-01 (2002)). In any event, the certification focused on the claimed failure to explain how much plaintiff would "net" from the settlement, a claim plaintiff does not renew on appeal.

rules that "[a] lawyer shall keep a client reasonably informed about the status of a matter," and "shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." R.P.C. 1.4(b), (c). However, particularly after being confronted with the release signed by plaintiff, Ambrosio conceded that plaintiff was informed of the status of the matter, was able to make informed decisions, and decided to settle the case for $200,000. Given Ambrosio's concessions in his deposition, plaintiff could not show Bergman violated the ethics rules.[6]

In any event, "the assertion that an attorney has violated one of our ethical rules does not give rise to a cause of action." Green v. Morgan Props., 215 N.J. 431, 458 (2013). "[S]tate disciplinary codes are not designed to establish standards for civil liability but, rather, to provide standards of professional conduct by which lawyers may be disciplined." Baxt v. Liloia, 155 N.J. 190, 202 (1998). "Although the Rules of Professional Conduct may inform the scope of an attorney's duties, those rules do not,

---

[6] Ambrosio's concessions similarly belied his report's citation of ethics rules that a lawyer shall not engage in "gross negligence," and "shall act with reasonable diligence and promptness in representing a client." R.P.C. 1.1, 1.3. Ambrosio's concession regarding the high-low agreement also undermined his report's citation of ethics rules concerning candor toward the tribunal, R.P.C. 3.3, and conduct involving dishonesty, R.P.C. 8.4(c).

in themselves, create a duty, and a violation of those rules, standing alone, does not form the basis of a cause of action." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 182 n.8 (2005).

Ambrosio could cite the ethics rules to support his opinions on the standards of care. Baxt, supra, 155 N.J. at 199-200; Carbis Sales, supra, 397 N.J. Super. at 79. However, those ethics rules could not support a cause of action after his repudiation in his deposition of any breach of those standards, and the resulting exclusion of his net opinion.

Accordingly, we agree with the trial court that Ambrosio's report amounted to a net opinion and was properly excluded.

IV.

The exclusion of Ambrosio's net opinion left plaintiff without admissible expert testimony. As expert testimony was required to carry plaintiff's burden to show legal malpractice, the trial court properly granted summary judgment. See R. 4:46-2(c) and Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Plaintiff's remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). We need not address Bergman's remaining arguments.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2392-15T2

**FISHER, P.J.A.D., concurring.**

I agree with nearly all my colleague has said about this case. I write separately to offer a few comments about one particularly odd circumstance.

Plaintiff's medical malpractice action, which lies at the heart of this legal malpractice action against his attorney in that case, was resolved when, at some point during the trial of the former,[1] plaintiff's then attorney (defendant Bergman) advised the trial judge the matter had been settled. Here's the entire agreement as then described by defendant Bergman:

> THE COURT: Okay, what could I do for you?
>
> MR. BERGMAN: If Your Honor pleases — first of all we need to state on the record that there's been an agreement as to a High/Low in this case.
>
> THE COURT: Okay. What are the parameters of that?
>
> MR. BERGMAN: The parameters are 200,000 is the low and 500,000 is the high.
>
> THE COURT: Is that correct . . . ?
>
> [DEFENSE COUNSEL]: That is correct, Your Honor.
>
> THE COURT: Okay.

---

[1] We have only been provided with a few pages of the trial transcript in that matter.

No one added anything further to this description of the settlement and, immediately following the above colloquy, defendant Bergman said he had "gone through all of the evidence [with plaintiff] and [described] what I would be intending herein after [to prove] and decided that . . . we're not going to proceed further with the case." With that, defense counsel requested a dismissal with prejudice, which the judge immediately granted. So ended the medical malpractice action.

Taken at face value, there can be no dispute about the nature of the agreement defined, albeit briefly, by defendant Bergman. He called it a high-low agreement and, when asked, he identified the high and the low. What he described was entirely consistent with how we've defined a true high-low agreement, i.e., an arrangement by which "defendant agree[d] to pay plaintiff a minimum recovery in return for plaintiff's agreement to accept a maximum sum regardless of the outcome of the trial." Benz v. Pires, 269 N.J. Super. 574, 578 (App. Div. 1994); see also Serico v. Rothberg, 448 N.J. Super. 604, 613 (App. Div.), certif. granted, __ N.J. __ (2017); Malick v. Seaview Lincoln Mercury, 398 N.J. Super. 182, 184 n.1 (App. Div. 2008).

If what was represented to the trial judge in the medical malpractice action actually expressed the parties' true settlement agreement, then, in my view, we would be required to reverse the

summary judgment entered in Bergman's favor in this legal malpractice action. If the parties to the medical malpractice action entered into a true high-low agreement, there would be no reason — having secured his adversary's agreement to pay his client $200,000 no matter what thereafter occurred — for Bergman to immediately volunteer that his client could not survive a motion to dismiss, pack his bags, and walk away from a potentially greater recovery. A legal malpractice claim based on a theory that defendant was negligent in failing to pursue the possibility of a greater reward — with no downside risk — does not, in my view, even require the support of expert testimony. Any juror could understand, without the assistance of an expert, that the plaintiff's attorney was negligent. Consequently, if the parties actually entered into a high-low agreement, defendant was negligent in failing to take his free spin and proceed to a final disposition of the trial even if a greater recovery seemed far out of reach. Had plaintiff pursued this theory in this legal malpractice action, the motion judge would have been required to deny Bergman's motion for summary judgment.

Plaintiff, however, has not pursued that theory. Plaintiff's argument on appeal and his expert's opinion are based on a premise that the settlement agreement was a false or fraudulent high-low agreement — that it wasn't a high-low agreement at all — that it

was simply a disguised agreement to settle for $200,000. In short, plaintiff does not dispute that when Bergman said the parties entered into a high-low agreement he really meant that plaintiff agreed to accept $200,000 in exchange for a release of his claims.

With these additional comments, and out of a concern that what occurred when the medical malpractice action was settled is not viewed as, and doesn't become, "business as usual" in our trial courts, I join in affirming the summary judgment entered in favor of defendant.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2392-15T2