**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4503-16T2

RANDALL FERMAN and DEBRA
FERMAN, Husband and Wife,

     Plaintiffs-Appellants,

v.

BOGAARD & ASSOCIATES, LLC,
LAURIE BOGAARD, ESQ., JANIS
DOMITER, and WEICHERT REALTORS,

     Defendants-Respondents.

_____

Argued November 7, 2018 – Decided December 20, 2018

Before Judges Fisher and Geiger.

On appeal from Superior Court of New Jersey, Somerset County, Law Division, Docket No. L-0126-16.

Peter A. Ouda argued the cause for appellants.

Patrick J. Cosgrove argued the cause for respondents Bogaard & Associates, LLC and Laurie Bogaard (Pillinger Miller Tarallo LLP, attorneys; Patrick J. Cosgrove, on the brief).

Peter N. Laub, Jr., argued the cause for respondents Janis Domiter and Weichert Realtors (Peter N. Laub, Jr. & Associates, LLC, attorneys; Peter N. Laub, Jr., and M. Teresa Garcia, on the brief).

PER CURIAM

In November 2010, plaintiffs Randall Ferman and Debra Ferman purchased a newly constructed home in Chester, New Jersey for $850,000 (the Property). The Property is subject to a conservation easement affecting nearly four acres of the approximately five and one-half acre parcel. Plaintiffs allege their closing attorney committed legal malpractice, and their realtors were negligent and committed consumer fraud, by failing to explain the scope of, and limitations imposed by, the conservation easement. Plaintiffs claim they would not have purchased the Property had they been properly advised about the easement. After owning the Property for four years, plaintiffs decided to list it for sale because it was too large for their needs. On September 23, 2016, plaintiffs sold the Property for $812,500.

Plaintiffs filed this action against defendants Laurie Bogaard and Bogaard & Associates, LLC, their attorneys in the purchase of the Property, alleging legal malpractice, and defendants Janis Domiter and Weichert Realtors, the realtors who represented plaintiffs in the purchase of the Property, alleging negligence and consumer fraud. Plaintiffs do not claim the Property was worth less than

2

the $850,000 purchase price. Plaintiffs sought damages comprised of: (1) their down payment and the closing costs incurred when purchasing the Property; (2) the carrying costs for the Property during the period they owned it, comprised of mortgage payments, real estate tax payments, homeowner's insurance premiums, and maintenance costs; and (3) the real estate commissions, closing costs, and moving expenses incurred when they sold the Property.

Defendants moved for summary judgment, contending their respective alleged negligence did not proximately cause the damages claimed by plaintiffs. The trial court granted partial summary judgment dismissing the majority of plaintiffs' damage claims with prejudice. Plaintiffs voluntarily dismissed their remaining claims and appealed. We affirm.

I.

We summarize the following facts from the summary judgment record, viewing "the facts in the light most favorable to [plaintiffs,] the non-moving part[ies]." Globe Motor Co.v. Igdalev, 225 N.J. 469, 479 (2016) (citing R. 4:46-2(c)). Plaintiffs were looking for a four bedroom house in the Chester area and found the Property on a real estate website. Debra Ferman was "fond" of the Property because it was new construction and provided ample privacy. She

described it as "pretty" and "park-like." Plaintiffs wanted to live in a wooded environment.

After their first visit to the Property, plaintiffs contacted Domiter, a real estate agent with Weichert Realtors, and discussed making an offer on the Property. Domiter told them the offer better begin at $900,000. At this time, Domiter informed Debra Ferman there was a conservation easement on the property, gave her a copy of the survey of the Property, which disclosed the conservation easement, and went over the survey with her. Debra Ferman testified she "just thought" the easement "was part of Patriot[s'] Path."[1] Randall Ferman was aware there was a conservation affecting the Property before plaintiffs submitted an offer to purchase it. He testified Domiter told him "there was Patriot[s'] Path and a conservation easement." Plaintiffs understood that people could walk through the Property on the Patriots' Path.

Randall Ferman did his own research and decided to offer $850,000 for the Property. The offer was accepted by the sellers in August 2010. After the offer was accepted, Randall Ferman visited the Property approximately six to

---

[1] "Comprised of 73 miles of main trails and 35 miles of spur trails located on 291.9 acres, Patriots' Path is a trail system of hiking, biking, and equestrian trails, as well as green open spaces[,]" linking several federal, state, county, and municipal parks. http://morrisparks.net/index.php/parks/patriots-path/ (last visited Dec. 11, 2018).

A-4503-16T2

eight times to monitor construction of the house. On one occasion, he met the builder, Donald Storm, and they walked around the Property. Storm pointed out the concrete monuments to verify the points of the conservation easement. The conservation easement was recorded, and presumably also disclosed by the title search.

Domiter referred plaintiffs to Bogaard, who initially met with Debra Ferman. Debra Ferman brought the survey to their initial meeting and discussed it with Bogaard. Debra Ferman thought the easement was part of Patriots' Path.

Plaintiffs each visited the Property multiple times before the closing, with Debra Ferman visiting it approximately ten times. The closing took place on November 16, 2010, at Bogaard's office, with plaintiffs, Bogaard, Greg Storms, and Greg Storm's attorney present. Neither the survey nor the conservation easement were discussed at the closing.

The conservation easement did not impact plaintiffs' use and enjoyment of the Property. Plaintiffs, especially Debra Ferman, lived at the Property for several years without any problems. Randall Ferman moved to Iowa in or about 2012 primarily for business purposes, and returned periodically to stay at the Property about thirty days per year. In 2014, plaintiffs decided to sell the Property because the house was too large for their needs and they "were looking

to downsize." Plaintiffs allege this is when they discovered the true nature of the conservation easement. Plaintiffs planned on moving back to Debra Ferman's townhouse. In 2016, plaintiffs listed the Property for sale for $849,900, only $100 less than they paid for it six years earlier. Debra Ferman continued to live at the Property with her daughter until September 2016, when it was sold for $812,500.

In their answers to interrogatories, plaintiffs allege they suffered the following damages: "The down payment and all closing costs. Every monthly payment, and every household expense. That number minus the difference between the purchase price and the sales price and all costs associated therewith."

Plaintiffs retained attorney Barry E. Levine as their expert as to the standard of care, causation, and damages. Levine opined plaintiffs are entitled to damages for the fees and costs incidental to the purchase of the Property reflected on the HUD-1 settlement statement, the carrying charges for the Property for the duration of their ownership, and all fees and charges incidental to the sale of the Property, such as real estate commissions and moving costs. Plaintiffs claimed they incurred $609,538.16 in expenses related to the Property.

A-4503-16T2

Levine recognized plaintiffs are not claiming the house is worth less than the amount they paid for it.[2]

Levine acknowledged the survey disclosed the conservation easement. The survey is dated September 10, 2010, some two and one-half months before the closing. The HUD-1 settlement statement set forth closing charges of $19,948 for plaintiffs.

Levine explained an attorney is obligated to exercise that degree of reasonable knowledge and skill that attorneys of ordinary ability and skill possess and exercise. Quoting from St. Pius X House of Retreats v. Camden Diocese, Levine opined Bogaard's duty of care as the attorney employed to investigate title to real estate is:

> to make a painstaking examination of the records and to report all facts relating to the title. He is, therefore, liable for any injury that may result to his client from negligence in the performance of his duties – that is, from a failure to exercise ordinary care and skill in discovering in the records and reporting all the deeds, mortgages and judgments, etc., that affect the title in respect to which he is employed.
>
> [88 N.J. 571, 588 (1982) (quoting Jacobsen v. Peterson, 91 N.J.L. 404 (Sup. Ct.), aff'd, 92 N.J.L. 631 (E. & A. 1918)).]

_____

[2] Notably, plaintiffs did not provide an appraisal of the Property, or an expert opinion on any diminution in its value caused by the conservation easement, as of the date of purchase or sale.

Levine further opined Bogaard was obligated to investigate and advise her clients regarding "all observable defects, deficiencies and imperfections of title."

Levine opined "Bogaard deviated from accepted standard of practice." He found there were no discussions with plaintiffs regarding the title issue of the conservation easement, which "is significant enough that the standard of care would require a full explanation of what it was and what it wasn't." Levine stated the attorney "must advise a client of the risks of the transaction in terms sufficiently clear to enable the client to assess the client's risks." Levine concluded both plaintiffs needed detailed explanation regarding the easement, which Bogaard never provided.

Levine then addressed proximate causation and damages. Recognizing that in order to prevail, plaintiffs must prove Bogaard's deviation from the standard of care was a substantial factor in causing their damages, he opined:

> the deviation from accepted standards of practice was a substantial factor in causing damages to the [p]laintiffs. The [p]laintiffs clearly had no real understanding of the property. When they decided to sell the property the prospective purchaser asked what could be done on the property. They had no idea what the restrictions were. This circumstantial evidence lends itself to the conclusion that they really had no idea and Ms. Bogaard had a duty to explain the conservation easement. The

record states that had they been so advised they would not have purchased this home and in fact would not have purchased any home. They are not claiming that the house is worth less than what they paid. They simply would not have purchased that home or any other home. The goal of the malpractice case is to place the client in the same position had the malpractice not occurred. See Lieberman v Employers Ins. of Wasau.[3] The damages therefore are all of the fees and costs incidental to the purchase which are set forth on the HUD. Such damages include all carry charges from the duration of the ownership. Such damages include all fees and charges incidental to the sale including [real] estate commission, moving costs etc. These would not have been incurred but for the purchase that they would not have made in 2010. Attached hereto is a schedule of fees that the [p]laintiffs have supplied in reference to the purchase, the ownership and the sale in 2016.[4] It is my opinion that these are items of recoverable damages in this case. Plaintiffs are also entitled to an award of attorney[']s fees in accordance with the Saffer[5] opinion.

---

[3] Lieberman v. Emp'rs Ins. of Wassau, 84 N.J. 325, 341 (1980).

[4] The record on appeal does not include the schedule of fees attached to Levine's report. The deposition exhibits include an email from Randy Ferman to counsel listing the following expenses for the Property for the seventy-one months plaintiffs owned it: mortgage payments $339,167; propane $42,000; electric $10,500; landscaping $16,800; and snow removal $6000. The email also listed the following upgrade expenses: patio installation $5500; and bathroom upgrade $5000. The email further stated plaintiffs incurred $3122 in moving expenses, an unexplained "[l]oss from sale of house" of $120,898.66, and rent at a town house in Chester for twelve months totaling $50,400.

[5] Saffer v. Willoughby, 143 N.J. 256 (1996).

A-4503-16T2

Upon completion of discovery, Bogaard and her law firm moved for summary judgment. Domiter and Weichert Realtors joined in the motion. Defendants did not seek summary judgment on the issue of whether they deviated from a standard of care or duty owed to plaintiffs. Instead, defendants sought summary judgment on the discrete issue of whether their alleged negligence proximately caused the damages claimed by plaintiffs.

Following oral argument, the trial court issued a March 31, 2017 order and written statement of reasons granting summary judgment dismissing plaintiffs' claims for damages for any diminution in value of the Property caused by the conservation easement, and for the "carrying costs" for the Property during the six years plaintiffs owned it. The trial court denied summary judgment as to plaintiffs' damage claim for the closing costs for the purchase and sale of the Property.

In response to plaintiffs' claim that defendants were responsible for all housing expenses associated with the Property while living there, including mortgage payments, maintenance costs, and utilities, the motion judge reasoned:

> Plaintiffs would certainly have lived in another house and paid for the mortgage, maintenance costs, utilities, etc. There is no evidence that the [p]laintiffs would not have incurred any housing costs from the time that they purchased the property in 2010 until the time they sold the property in 2016. The carrying costs for the

property at issue are not actual sustained damages causally related to any alleged malpractice. There is no evidence [plaintiffs] would have lived in a less expensive house . . . . Plaintiffs have not provided any (expert) evidence to indicate how or even whether the value that the [p]laintiffs received while living [in] the property can be evaluated to mitigate the costs that the [p]laintiffs claim that they incurred.

The judge also found plaintiffs' claim that defendants' conduct was a substantial factor in causing them to incur a down payment, closing costs, monthly payments, and all other expenses relating to the property was not supported by any evidence. The judge concluded plaintiffs presented no evidence they would not have purchased the property had they fully understood the nature and extent of the conservation easement, noting Debra Ferman testified that she enjoyed living in the house. The judge also concluded plaintiffs' expert also failed to demonstrate plaintiffs' alleged damages were proximately caused by defendants' conduct, stating:

> Even though Mr. Levine indicates that damages "include carrying charges from the duration of the ownership", he offers no facts or law to support his opinion. Simply put, that portion of Mr. Levine's opinion is a "net opinion" to which this court gives no weight. The portion of Mr. Levine's opinion that relates to alleged damages is not supported by any legal precedent or reason. Mr. Levine's recitation of the damages is effectively what the "lay" [p]laintiffs personal[ly] believe they should be entitled to does not provide a basis to support [p]laintiff[s'] damage claim.

11

Plaintiffs voluntarily dismissed their remaining claims prior to filing this appeal. On appeal of the trial court's grant of partial summary judgment, plaintiffs argue summary judgment should have been denied because there are disputed issues of material fact regarding proximate causation of their alleged damages on each of their claims. They further argue the trial court erred by using a breach of contract model for damages because this is not a breach of contract claim against the seller.

## II.

We review the grant of summary judgment de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014). We therefore "apply the same standard governing the trial court," Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012), and do not defer to the trial court's interpretation of "the meaning of a statute or the common law," Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

"Our court rules require summary judgment to be granted when the record demonstrates that 'there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Davis v. Brickman Landscaping, 219 N.J. 395, 405-06 (2014) (quoting R. 4:46-2(c)). The court considers "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational

12

factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "In applying that standard, a court properly grants summary judgment 'when the evidence is so one-sided that one party must prevail as a matter of law.'" Davis, 219 N.J. at 406 (quoting Brill, 142 N.J. at 540).

Having reviewed the record and applicable legal principles, we agree with the trial court that plaintiffs' expert issued a net opinion with respect to proximate causation of the damages claimed by plaintiffs other than closing costs and that plaintiffs cannot establish proximate causation of damages other than closing costs as a matter of law. For these reasons, we find that the trial court properly granted partial summary judgment to defendants.

## III.

"Legal-malpractice suits are grounded in the tort of negligence." McGrogan v. Till, 167 N.J. 414, 425 (2001). "[A] legal malpractice action has three essential elements: '(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff.'" Jerista v. Murray, 185 N.J. 175, 190-91 (2005) (quoting McGrogan, 167 N.J. at 425). "The plaintiff

bears the burden of establishing those elements by some competent proof." <u>Davis</u>, 219 N.J. at 406 (citations omitted).

Generally, a client only recovers losses proximately caused by the attorney's professional negligence. <u>Lieberman</u>, 84 N.J. at 341; <u>Froom v. Perel</u>, 377 N.J. Super. 298, 313 (App. Div. 2005); <u>2175 Lemoine Ave. v. Finco, Inc.</u>, 272 N.J. Super. 478, 487 (App Div. 1994). "Proximate cause consists of 'any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" <u>Townsend v. Pierre</u>, 221 N.J. 36, 51 (2015) (quoting <u>Conklin v. Hannoch Weisman</u>, 145 N.J. 395, 418 (1996)). "To establish the requisite causal connection between a defendant's negligence and plaintiff's harm, plaintiff must present evidence to support a finding that defendant's negligent conduct was a 'substantial factor' in bringing about plaintiff's injury, even though there may be other concurrent causes of harm." <u>Froom</u>, 377 N.J. Super. at 313 (citing <u>Conklin</u>, 145 N.J. at 419).

"The burden is on the client to show what injuries were suffered as a proximate consequence of the attorney's breach of duty. That burden must be sustained by a preponderance of the competent, credible evidence and is not satisfied by mere 'conjecture, surmise or suspicion.'" <u>2175 Lemoine Ave.</u>, 272 N.J. Super. at 487-88

(citations omitted) (quoting Lamb v. Barbour, 188 N.J. Super. 6, 12 (App. Div. 1982)).

Applied here, the proximate cause element requires plaintiffs to prove by a preponderance of the competent, credible evidence that their alleged damages (their down payment and the closing costs incurred when purchasing the Property; the carrying costs for the Property during the period they owned it, comprised of the mortgage payments, real estate tax payments, homeowner's insurance premiums, and maintenance costs; and the real estate commissions, closing costs, and moving expenses incurred when they sold the Property), were proximately caused by defendants' negligence.

In legal malpractice cases, damages are generally measured by the amount the client "would have received but for the attorney's negligence." Froom, 377 N.J. Super. at 313 (quoting 2175 Lemoine Ave., 272 N.J. Super. at 488). The client must have sustained actual damage that is real, not merely speculative. Olds v. Donnelly, 150 N.J. 424, 437 (1997). "[I]n cases involving transactional legal malpractice, there must be evidence to establish that the negligence was a substantial factor in bringing about the loss of a gain or benefit from the transaction." Froom, 377 N.J. Super. at 315. "In addition, a negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client in [successfully] prosecuting

15

the legal malpractice action. Those are consequential damages that are proximately related to the malpractice." Saffer, 143 N.J. at 272.

The motion judge determined plaintiffs' expert rendered a net opinion as to the damage claim for the carrying charges on the Property for the duration of plaintiffs' ownership, and gave that aspect of the opinion no weight. "The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend, 221 N.J. at 52. A trial court's decision "to strike expert testimony is entitled to deference on appellate review." Ibid. When "a trial court is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'" Id. at 53 (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 384-85 (2010)). "Appellate review of the trial court's decisions proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Ibid.

N.J.R.E. 703 "mandates that expert opinion be grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.'" Ibid. (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)). "The net opinion

rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Id. at 53-54 (alterations in original) (quoting Polzo, 196 N.J. at 583); see also Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 103-04 (App. Div. 2001) (holding that trial court properly excluded expert report in legal malpractice action where expert failed to reference any evidential support of duty of care).

The net opinion rule requires that an expert "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Davis, 219 N.J. at 410 (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011)). The rule "mandates that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are [. . .] reliable.'" Townsend, 221 N.J. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). An expert's opinion "is excluded if it is based merely on unfounded speculation and unquantified possibilities." Ibid. (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)). "[A] trial court may not rely on expert testimony that lacks an appropriate factual foundation and fails to establish the existence of any standard about which the expert testified." Pomerantz, 207 N.J. at 373.

"Therefore, an expert offers an inadmissible net opinion if he or she 'cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is personal.'" Davis, 219 N.J. at 410 (quoting Pomerantz, 207 N.J. at 373).

Applying these standards, we conclude plaintiffs' expert issued net opinions with respect to proximate causation and damages of certain aspects of plaintiffs' claims. Plaintiffs' expert opined that defendants' negligence proximately caused damages, which included all of the carrying charges for the Property for the duration plaintiffs owned it. With regard to these issues, Levine made bare conclusions. See Buckalew v. Grossbard, 87 N.J. 512, 524 (1981) ("[A]n expert's bare conclusions, unsupported by factual evidence, is inadmissible."). Levine failed to provide a factual basis supporting his conclusion that plaintiffs' housing expenses would have been lower had they not purchased the Property, and if so, to what degree, much less no housing costs at all. Instead, he merely assumed all of plaintiffs' housing expenses constituted damages proximately caused by defendants' negligence. As recognized by the motion judge, plaintiffs would still have incurred housing expenses had they lived elsewhere rather than purchasing the Property. Levine failed to take that

into account. He offered no data or analysis demonstrating plaintiffs' would have incurred lower housing expenses if they had lived elsewhere.

In addition, Levine did not cite any applicable legal precedent or standard for his conclusion the carrying charges or down payment were recoverable damages in this matter. Levine failed to establish the existence of any standard or objective support for his opinion. See Davis, 219 N.J. at 410; Pomerantz, 207 N.J. at 372.

For these reasons, we discern no abuse of discretion by the trial court in determining the expert's conclusion constituted a net opinion with regard to plaintiffs' damage claims for the Property's carrying charges. The decision to give the expert's report no weight in that regard is amply supported by the record.

We next turn to plaintiffs' argument the trial court improperly resolved issues of disputed fact. We disagree. Other than providing bank statements and other evidence of their housing costs, plaintiffs' discovery responses provided no additional factual basis for their damage claims for their down payment or carrying charges. Plaintiffs' answers to interrogatories and deposition exhibits merely listed their housing expenses at the Property and the amount of their down payment. They offered no evidence that they could live free or that their

19

housing costs for a comparable residence would have been lower had they not purchased the Property.

Even assuming the housing expenses asserted by plaintiffs accurately reflected those incurred during their ownership of the Property, the motion judge correctly determined plaintiffs did not offer any competent evidence establishing any actual damages they suffered for housing costs, other than closing expenses, as a result of defendants' negligence or consumer fraud. Plaintiffs' damage claims for housing costs were factually unsupported and entirely speculative.

We conclude the trial court properly granted summary judgment dismissing that aspect of plaintiffs' damage claims. The competent evidential materials presented, when viewed in the light most favorable to plaintiffs, are not sufficient to permit a rational factfinder to resolve the claim for carrying charge damages in favor of plaintiffs. Although issues of proximate causation are typically for the jury to resolve, "a court may decide the issue as a matter of law where 'no reasonable jury could find that the plaintiff's [alleged] injuries were proximately caused' [by the defendant's conduct.]" Broach-Butts v. Therapeutic Alts., Inc., 456 N.J. Super. 25, 40 (App. Div. 2018) (quoting Vega by Muniz v. Piedilato, 154 N.J. 496, 509 (1998)). Further, in legal malpractice cases, proximate causation must

ordinarily be established by expert testimony. Vort v. Hollander, 257 N.J. Super 56, 61 (App. Div. 1992). As discussed above, plaintiffs' expert issued an inadmissible net opinion with respect to proximate causation.

Finally, plaintiffs claim the trial court erred by using a breach of contract model for damages. We conclude the proper measure of damages in a case involving a consummated residential real estate purchase, where the purchasers claim they would not have purchased property affected by a conservation easement had they known of the nature and extent of the easement, but did not because of the negligence of their attorney or the negligence or fraud of the realtors, is the diminution in value, or the difference between the price paid and the actual value of the property acquired, proximately caused by the existence of the conservation easement. See Correa v. Maggiore, 196 N.J. Super. 273, 282, 286 (App. Div. 1984) (holding "the diminution in value caused by defendant's deceit better reflects plaintiff's actual loss and satisfies the reasonable expectations of the parties"). We contrast this matter to cases in which the inability to convey marketable title, in breach of the contract of sale, results in the property not being sold. In those instances, the damages are measured by the difference between the market price at the time of sale and the contract price, closing costs, and potentially loss of the benefit of the bargain

21

damages, including the difference in interest rates. <u>Donovan v. Bachstadt</u>, 91 N.J. 434, 445-48 (1982).

Here, plaintiffs do not claim they paid more for the Property than it was worth. They offered no evidence that the value of the Property was diminished by the conservation easement. They do not claim their use or enjoyment of the Property was impaired by the easement. They did not decide to sell the Property because of the easement. They have no evidence the sale price was affected by the conservation easement.

The judge denied summary judgment as to the closing costs incurred by plaintiffs during the purchase and sale of the Property. However, plaintiffs voluntarily dismissed those claims.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4503-16T2