**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0074-24

SURYA P. IRAKAM, M.D. and
ANITHA IRAKAM, M.D.,
individually and derivatively on
behalf of ASTRA EHEALTH, LLC
and AXELIA HEALTH, LLC,

     Plaintiffs-Appellants,

v.

DIFRANCESCO, BATEMAN,
COLEY, YOSPIN, KUNZMAN,
DAVIS, LEHRER & FLAUM, PC,
RICHARD R. AHSLER, ESQUIRE
and JEFFREY W. POMPEO,
ESQUIRE,

     Defendants-Respondents.

_____

Argued September 16, 2025 – Decided October 9, 2025

Before Judges Chase and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0261-22.

Jonathan P. Vuotto argued the cause for appellants (McAndrew Vuotto, LLC, attorneys; Jonathan P. Vuotto, on the briefs).

William F. O'Connor, Jr., argued the cause for respondents (McElroy, Deutsch, Mulvaney & Carpenter, attorneys; William F. O'Connor, Jr., of counsel; Daniel A. Malet, on the brief).

PER CURIAM

This legal malpractice case arises from the dissolution of a limited liability company. Plaintiffs Surya P. Irakam, M.D. and Anitha Irakam, M.D.,[1] individually and collectively on behalf of Astra eHealth, LLC and Axelia Health, LLC, appeal from a July 2, 2024 order granting summary judgment in favor of defendants DiFrancesco, Bateman, Coley, Yospin, Kunzman, Davis, Lehrer, & Flaum, PC, (the DiFrancesco Firm or the Firm), Richard R. Ahsler, Esq. and Jeffrey W. Pompeo, Esq. The trial court dismissed with prejudice plaintiffs' claims of legal malpractice, breach of contract, intentional breach of fiduciary duty and conflict of interest, aiding and abetting breach of fiduciary duty and other misconduct. After reviewing the record in light of the parties' arguments and governing legal principles, we reverse the grant of summary

---

[1] Because plaintiffs share the same surname, we use their first names when referring to them individually, and when referring to them collectively, we use the "Irakams." We intend no disrespect.

judgment in favor of defendants because there are material facts in dispute that pertain to defendants' representation of plaintiffs individually and regarding whether defendants were either aware or part of a scheme to defraud plaintiffs.

I.

We glean the following facts from the record.

A.

Relevant Parties and Entities

Surya and Anitha, husband and wife, are both medical doctors. In 2015, Vasudha Tulsyan and Anitha formed Astra, a New Jersey limited liability telemedicine company for the purpose of "developing a telemedicine . . . software system." Vasudha was married to Nirman Tulsyan, (Nirman), also both medical doctors. Anitha and Vasudha each held fifty percent membership interest in Astra. Their husbands, Surya and Nirman, held no membership interests in Astra but plaintiffs contend Surya and Nirman were deemed "de facto managers/officers of Astra."

Ashok Tulsyan, Nirman's father, took on financial and operational duties in Astra, serving in the role of Chief Financial Officer (CFO).

Fox Rothschild, LLP formed and organized Astra, served as its registered agent, and drafted documents regarding Astra's operations, including Astra's

3

Operating Agreement (OA) dated January 5, 2015. It is undisputed that, in 2003 or 2004, Fox Rothschild served as personal counsel for the Irakams.

At various times between 2013 and approximately 2020, the DiFrancesco Firm represented Astra and the Irakams individually. Ahsler and Pompeo are attorneys who practice law at the Firm and who provided legal services to both the company and the Irakams.

In 2015 to 2016, Astra worked with another company, Inadev Corporation, "to develop its software, including telemedicine, patient registration, insurance verification[,] and patient upfront payment estimation software."

In 2017, the Irakams and Tulsyans formed Axelia because they believed Axelia was a more "marketable name for Astra." In late 2017, Astra began working with Niku Trivedi and Rajesh Devi, officers in another company known as Chenoa Information Services, Inc., "about a possible joint venture between Astra and Chenoa to market healthcare-software related assets."

B.

Key Events

At the time Astra and Chenoa were discussing a potential merger, Astra provided Chenoa, Trivedi, and Devi with confidential and proprietary

4

information. On April 8, 2018, Nirma emailed Surya and requested an electronic version of Astra's OA, claiming he wanted to review it before formalizing anything with Chenoa.

Ashok, Astra's CFO, reported that by the end of 2017, the company was in dire financial straits. Surya acknowledged that, as of April 2018, Astra had only two customer contracts and no income. Ashok advised Surya that the company was insolvent and recommended it be dissolved.

On April 17, 2018, Ashok met with attorneys Pompeo and Ahsler, purportedly to discuss dissolving Astra. Prior to the meeting, Pompeo reviewed Astra's OA. Neither Surya nor Anitha "were at the meeting and [had] no personal knowledge concerning what occurred at the meeting." Nor were Surya or Anitha advised of the meeting. Defendants assert:

> . . . the only topic discussed at the meeting was what would be needed legally to dissolve the company in accordance with the Astra Operating Agreement and New Jersey law in the event the members agreed to dissolve the company. Plaintiffs dispute[ed] this assertion stating that [d]efendant Pompeo and A[hs]ler testified that they could not recall exactly what was said at the meeting. Defendants assert that there was no discussion at the meeting about anyone involved in Astra engaging in other business activities or wanting to start another venture.

A-0074-24

Later that same day, Nirman emailed Surya "explaining that he was dropping out of Astra due to its financial condition." Surya responded saying "I fully understand and as you know we don't have better options. But let's not make quick decisions." Approximately ten days later, Ashok texted Surya suggesting that it would be less costly to have the DiFrancesco Firm draft the dissolution documents rather than Fox Rothschild. After obtaining Surya's consent, Ashok asked defendants to prepare the appropriate documentation to dissolve Astra.

Ahsler prepared a certificate and plan of dissolution and completed New Jersey's form certificate of dissolution and termination. These were emailed to Ashok on May 4, 2018, and the same day, Ashok forwarded the dissolution documents to Surya.

Surya alerted Ashok of the need to contact Fox Rothschild, the law firm who set up the company, and some minority members of the company's dissolution. Surya did not consult any attorneys at Fox Rothschild, nor did he contact any of the attorneys at the DiFrancesco Firm regarding the dissolution documents.

6

A-0074-24

By June 11, 2018, the dissolution documents had been signed by all the parties and Ashok delivered them to the DiFrancesco Firm on June 12, 2018. They were later properly filed.

In August 2018, Surya discovered a website for a company called Xenio Health LLC, which he asserted was an "exact replica" of Astra and, except for him, its owners were the same. On August 13, 2018, Surya emails Nirman and Ashok, confronting them about the Xenio discovery and threatening to sue.

Ashok requested to meet with the attorneys from the DiFrancesco Firm after Surya threatened legal recourse. On August 20, 2018, Ahsler met with Ashok, Nirman, and Trivedi. Following this meeting, Ahsler prepared a memorandum to the file regarding the meeting.

In this memorandum, Ahsler advised the Tulsyans and Trivedi of the duties of loyalty and care that members and managers of an LLC owe to each other. Ahsler also noted that Section 2.2 of Astra's OA, "somewhat insulated [the Tulsyans] from any obligation to Surya to bring him into Xenio." He further explained that the DiFrancesco Firm "might be conflicted out" from representing them in the dispute, "since technically we represented the [c]ompany in connection with the dissolution." Ahsler advised Nirman not to respond by

A-0074-24

email to Surya's August 13 email because there "is no valid reason to create a paper trail now."

On October 15, 2018, plaintiffs filed a complaint against the Tulsyans, Ashock, Trivedi, Devi, Inadev, Chenoa, Xenio, and others, alleging plaintiffs were defrauded by these parties. The underlying lawsuit has been settled.

C.

Representation of Plaintiffs by DiFrancesco Law Firm

In this action, plaintiffs allege defendants deviated from the applicable standard of care by, "advising the Tulsyans in connection with their scheme to defraud [p]laintiffs while having a conflict of interest based on [d]efendants' representation of [p]laintiffs." The Irakams contend the DiFrancesco Firm had a continuing attorney-client relationship with them individually and also represented Astra. As a result, the Irakams allege that the Firm owed them a duty of care.

During this litigation, in September 2023, defendants produced an "Agreement to Provide Legal Services" (2013 Agreement) dated January 17, 2013. The Agreement identified the clients as: "Corporate Entity To Be Formed; Nirman Tulsyan, M.D., Individually, Vashudha Tulsyan, M.D., Individually, Surya Irakam, M.D., Individually, and Anitha Irakam, M.D.,

8

Individually."  No other retainer agreement between the Firm and the parties was produced.

Indeed, defendants acknowledge other instances where the Firm represented the Irakams individually after the 2013 Agreement was executed. For example, in 2016, Pompeo communicated with Surya about commercial leases for corporate entities "through which the Tulsyans and Irakams operated their medical practices;" and also discussed employment agreements.  In November 2017, Surya emailed Ashok regarding a settlement agreement involving Astra Health Center of Newark LLC in connection with litigation against the landlord.  Defendants further acknowledged representing the Irakams individually on "matters involving Azzam Baker, M.D., Lyons Mall and certain promissory notes involving Kishori P. Shah, M.D. and Praful Shah, M.D." During his deposition, Pompeo acknowledged that the DiFrancesco Firm represented the Irakams although he could not specify a time period.

Moreover, defendants' liability expert, Stuart Reiser, Esq., acknowledged that the DiFrancesco Firm represented Anitha individually regarding her personal guaranty for the Hoboken lease in 2013.  He also acknowledged that the Firm was representing the Irakams individually in Chase litigation ending in April 2017.

A-0074-24

## D.

## Present Litigation

In April 2024, both parties moved for summary judgment. Following oral argument, on July 2, 2024, the trial court issued an order with an accompanying written decision, granting defendants' summary judgment motion and dismissing plaintiffs' complaint with prejudice. On the issue of whether defendants owed the Irakams individually a duty of care, the trial court stated:

> the motion record has demonstrated a factual dispute over whether [d]efendants were representing [p]laintiffs individually as of April [] 2018 to give rise to such a duty when the alleged scheme took place.

Contrary to the Irakams' assertions, the court noted that the 2013 Agreement required any additional services to be "memorialized in a new agreement;" however, "[t]here [was] no other agreement." Ahsler testified that his representation of the Irakams ended in 2018. Again, the court stated that the "the factual record suggests that [d]efendants, or at least the Firm, represented [p]laintiffs in an individual capacity up until 2021 for other legal matters." Nonetheless, the trial court concluded that at the time of Astra's dissolution in 2018, there was "no genuine issue of material fact . . . as to whether [d]efendants represented [p]laintiffs individually. "

As to whether defendants breached a duty to the Irakams, the court ruled:

10

A-0074-24

[e]ven if the court found that [d]efendants did represent [p]laintiffs individually at the time of the dissolution, and, consequently did owe a duty of care to [p]laintiffs, the court finds that [p]laintiffs, and even considering the evidence in the light most favorable to [p]laintiff[s], the court finds that [p]laintiff[s] ha[ve] failed to demonstrate by any competent evidence that that duty was somehow breached.

The court found that no one in attendance at the April 17, 2018 meeting with Ashok and defendants recalled discussing anything other than Astra's dissolution. The court concluded:

Simply put, no evidence, direct or circumstantial, in the motion record supports a finding that [d]efendants were aware of any scheme to defraud [p]laintiffs or that [d]efendants were part of any such scheme.

Thus, the court granted defendants' motion for summary judgment and dismissed the Irakams' complaint with prejudice.

On July 22, 2024, plaintiffs filed a motion for reconsideration of the trial court's July 2, 2024 summary judgment order. On August 16, 2024, the trial court held oral argument and thereafter, denied reconsideration.

This appeal followed. The Irakams contend there are genuine issues of material fact in dispute that require a trial. Specifically, they assert the trial court erred by failing to recognize those disputed facts regarding: (1) defendants' representation of plaintiffs, which gave rise to a duty of care; and

A-0074-24

(2) whether defendants breached that duty by either being a part or aware of the scheme to defraud plaintiffs by establishing Xenio.

## II.

Our review of a trial court's summary judgment decision is de novo and we apply the same standard used by the trial court. DeSimone v. Springpoint Sr. Living, Inc., 256 N.J. 172, 180 (2024); Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Rule 4:46-2(c) provides a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540). To decide "whether a genuine issue of material fact exists, the trial court must

12

'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 450, 472 (2020) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).  We "accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414-15 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"A legal malpractice claim is 'grounded in the tort of negligence.'" Nieves v. Off. of the Pub. Def., 241 N.J. 567, 579 (2020) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)).  To establish a legal malpractice claim, a plaintiff must prove:  (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney; (2) the breach of that duty by the defendant; and (3) proximate causation of the damages claimed by the plaintiff.  McGrogan, 167 N.J. at 425 (citing Conklin v. Hannock Weisman, 145 N.J. 395, 416 (1996)). "The client bears the burden of proving by a preponderance of competent credible evidence that injuries were suffered as a proximate consequence of the attorney's breach of duty." Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996).

A.

Duty of Care

We first address plaintiffs' contention that defendants represented them individually and thus owed them a duty of care. Surya testified that he believed that defendants continuously represented them individually over the years along with representing Astra during its dissolution. Defendants counter that "all of the competent evidence showed that [d]efendants represented Astra and only Astra related to the dissolution" during the key 2018-time frame. Based on our de novo review, we are satisfied that a genuine factual dispute exists as to whether defendants represented the Irakams individually during the 2018-time frame.

It is undisputed that defendants represented the Irakams individually on multiple matters before 2018 as well as after Astra's dissolution in 2018. In defendants' expert's report, he states:

> At various times, the DiFrancesco Firm also provided services to one or both of []plaintiffs individually on matters unrelated to the dissolution of Astra or the events underlying this litigation. However, the record shows that as of April 2018, through the end of August 2018, the DiFrancesco Firm did not have any active matters for [] plaintiffs personally. Prior to April 2018 and the dissolution, these unrelated matters involved (i) 2013 Astra lease transactions relating to 95 Hudson St. in Hoboken and Lyons Mall in Basking Ridge, where

14

A. Irakam was a guarantor (as was V. Tulsyan) and (ii) a litigation commenced by JP Morgan Chase against Astra and its members, including A. Irakam, that concluded in January 2017. After August 2018 and the dissolution, the unrelated matters were two (2) litigations commenced against Astra and its members, including A. Irakam – (i) the Azzam Baker litigation commenced in May 2019 and settled in January 2022, and (ii) the 50 Washington Ave., LLC litigation commenced in January 2019 and settled in August 2019. The DiFrancesco Firm also provided legal services to the Tulsyans and Ashok Tulsyan individually on matters unrelated to the dissolution of Astra or the events underlying this litigation.

Thus, Reiser concluded that defendants owed no legal duty to the Irakams because "they were initially consulted by Ashok Tulsyan in April 2018 on behalf of Astra, not its constituents."

Plaintiffs' expert, Phillip L. Faccenda, Esq., concluded that defendants provided "regular and continuous representation of the Irakams individually, in all matters involving Astra, as a matter of continuous routine practice." He opined that the record demonstrated "a continuous routine practice and course of dealing" between plaintiffs and the Firm, which included "the focus period from April 2018 through August 2018." The different conclusions reached by the experts highlight the genuine factual dispute between the parties.

We are unpersuaded by defendants' assertion that Surya's belief regarding the continuous nature of defendants' representation is insufficient to establish an

15

attorney-client relationship. This assertion, however, ignores the multiple-year course of individual representation of not only the Irakams but the Tulsyans as well. A reasonable inference from these multiple instances of individual representation is that, during the key time frame in 2018, the Irakams reasonably believed defendants continued to represent them individually.

Defendants next assert that the lack of a written retainer agreement demonstrates the lack of an attorney-client relationship between the Firm and the Irakams. We are unpersuaded by this argument in light of the repeated instances of legal representation without any additional retainer agreements.

Moreover, it is undisputed that the DiFrancesco Firm represented Astra during the dissolution without a retainer agreement. When dealing with an organization's directors, officers, members and so forth, RPC 1.13 requires a lawyer to explain "the identity of the client" when such "explanation is necessary to avoid misunderstanding on their part." The record is void of the Firm providing any such explanation to plaintiffs. As plaintiffs contend, the lack of a retainer agreement for the dissolution matter "leaves it to the parties' respective intent and understanding of who was being represented." Discerning the parties' intent is a factual determination—one better resolved at trial. See Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 291 (1988); Wilson v. Parisi, 268 N.J.

16

A-0074-24

Super. 213, 217 (App. Div. 1993) (internal quotations and citations omitted). Based on these facts, we are satisfied that plaintiffs have provided sufficient evidence that a genuine issue exists regarding whether defendants represented the Irakams individually during this critical time so as to give rise to a duty of care.

B.

Breach of Duty of Care.

Although the trial court determined that defendants did not owe a duty of care to plaintiffs at the time of Astra's dissolution, the court alternatively reasoned that even if such a duty existed, plaintiffs failed to demonstrate by any competent evidence that the duty was breached. During oral argument, the trial court recognized that plaintiffs had "a lot of indirect evidence . . . circumstantial evidence" but no direct evidence that defendants knew about the scheme. In its decision, the trial court determined nonetheless that "[p]laintff[s] has failed to demonstrate by any competent evidence that [the] duty was somehow breached." In sum, the court found there was "no evidence, direct or circumstantial," that would lead a reasonable fact finder to conclude that defendants "were aware of any scheme to defraud [p]laintiffs or that [d]efendants were part of any such scheme." We reject the trial court's determination that there was no competent

17

evidence to show defendants breached the duty of care during the key time frame, justifying summary judgment. Rather, giving plaintiffs the benefit of every reasonable inference, our de novo review demonstrates sufficient material factual issues as to whether defendants breached that duty, thus making summary judgment inappropriate.

The task of the trial court is to determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brill, 142 N.J. at 536, (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, (1986)). In assessing the evidence of the core issue of a breach of the duty of care, "[b]oth direct and circumstantial evidence are equally acceptable forms of proof." Newmark-Shortino v. Buna, 427 N.J. Super. 285, 312 (App. Div. 2012) (citations omitted). Indeed, "circumstantial evidence may be deemed more certain and satisfying than direct evidence." Ibid.

The trial court did not account for the circumstantial evidence presented and the reasonable inferences that could be drawn from those facts. First, the trial court found that there was no discussion at the April 17, 2018 meeting "other [] than the dissolution of the company." However, the court did not address the timing of the meeting and events leading up to it. For instance, on

18

April 8, 2018, Nirman requested a copy of Astra's OA purportedly before finalizing any agreement with Chenoa. On April 16, 2018, Ashok forwards the OA to Pompeo, who reviews it and marks it up in advance of the meeting the next day allegedly for the purpose of discussing Astra's dissolution. On April 17, 2018, at the meeting with Pompeo, Ashok and the Tulsyans are present; the Irakams were neither advised of nor invited to attend this meeting.

Plaintiffs assert a legitimate inference to be drawn from these facts that they were intentionally excluded from the meeting so that defendants could discuss the purported scheme with the Tulsyans.

Next, Pompeo's time sheet regarding the April 17, 2018 meeting states, "Conference—Ashok and R. Ahsler re: []dispute." No one, however, could explain what the dispute was in reference to; nor could Pompeo recall why he notated his file in this manner. Plaintiffs contend a reasonable inference, to be drawn from this fact, is that the "dispute" refers to a potential dispute between the Tulsyans and the Irakams arising after the dissolution of Astra.

Plaintiffs further point to Ahsler's markings on the OA as evidence of the nefarious purpose of this meeting. Ahsler made the following markings in relevant part: (1) Section 2.1: underlined the first purpose of the company being "to develop, market and offer for sale computer programs and applications for

19

A-0074-24

organizations that provide health care services[;]" (2) starred Section 2.2, "Other Businesses" which does "not prohibit any [m]ember from conducting other businesses or activities, whether or not such other business or activity, directly or indirectly, competes with the business of the company[;]" (3) placed a check mark next to Section 3.3, "Admission of Additional Members" authorizing the company to sell additional membership units; and (4) placed a check mark next to Section 5.6, "Member Indemnification," which requires members to:

> "indemnify, defend and hold the [c]ompany, the [m]anager and each other [m]ember . . . harmless from and against, any and all liability, to any [p]erson incurred by any of the [i]ndemnifying [p]arties by reason of any fraudulent, criminal or grossly negligent act or omission of or breach of this agreement . . . ."

Ahsler could not explain how his notations bore any relevance to Astra's dissolution. Plaintiffs therefore contend that these markings have no relevance to Astra's dissolution; instead, the markings are more relevant to a scheme to defraud. Therefore, we are satisfied that the circumstantial evidence and the reasonable inferences to be drawn from this evidence create a genuine factual dispute regarding whether defendants breached the duty of care owed to plaintiffs.

Plaintiffs next point to the events occurring after the April 17, 2018 meeting. On April 30, 2018, Nirman advises that he will no longer be involved

20

with Astra. Xenio was formed shortly after the meeting without the Irakam's knowledge and operated in the same line of business as Astra. In August 2018, Surya discovered Xenio's website and threatened legal action against the Tulsyans.

After Surya's discovery, Ahsler met with the Tulsyans and Trivedi and later prepared a memorandum to the file memorializing this meeting. During this meeting, Ahsler "felt compelled" to advise the parties of "the duties of loyalty and care that members and managers owe each other in an LLC." Ahsler also advised Nirman "not to respond by email" to Surya and avoid a paper trail. Plaintiffs contend a legitimate inference to be drawn from this memorandum that if defendants had no knowledge of the scheme, then there would be no reason for such advice.

Because credibility determinations play a role in assessing these material facts, summary judgment is inappropriate. See Parks v. Rogers, 176 N.J. 491, 502 (2003) (quoting Gilhooley v. County of Union, 164 N.J. 533, 545 (2000)) (holding on summary judgment the "court's function is not to weigh the evidence and determine the outcome"; only to assess whether "material dispute of fact exists"). In addition to the circumstantial evidence, both parties presented expert witnesses who opined on the duty of care and the breach of that duty.

21

A-0074-24

Plaintiffs' expert, Faccenda, concluded that because of defendants' "course of dealing and routine practice of providing representation individually for the Irakams," they relied on that routine practice "whenever [] [d]efendants acted as counsel in a matter involving Astra." Faccenda further concluded that "[d]efendants knowingly facilitated and assisted in the scheme with others to wrongfully dissolve Astra" and "deprive[d] [] plaintiffs of their economic interests." Defendants' expert countered by concluding first that defendants owed no legal duty of care to the Irakams individually, and second, even if a duty was owed, it does not include "unearthing an undisclosed fraudulent scheme" occurring in "one [] preliminary meeting with the [CFO] who inquired about the dissolution process" for Astra. This meeting, standing alone, the expert concluded, was not a "red flag for a nefarious plot[,]" and further concluded, "there is no evidence that [] defendants knew of any underlying scheme by the Tulsyans to defraud [] [p]laintiffs or any nefarious purpose in seeking to dissolve an insolvent company."

These competing expert opinions further demonstrate genuine material disputes in this case—first, as to the duty of care, and second, as to whether the duty was breached. In other words, the dispute as to whether defendants were representing the Irakams individually during the key period in 2018, and

A-0074-24

therefore, owed them a duty of care; and whether they breached that duty based on their knowledge or awareness of this scheme to secretively and fraudulently dissolve Astra for the purpose of establishing a new, potentially more lucrative company, i.e. Xenio, are fact sensitive determinations requiring submission to a jury. These material facts "preclude an award of summary judgment and require[e] submission of the issue[s] to the ultimate finder of fact." Davin, L.L.C. v. Daham, 329 N.J. Super. 54, 71 (App. Div. 2000) (citing R. 4:46-2(c)); Brill, 142 N.J. at 540.

In sum, we reverse the grant of summary judgment with respect to plaintiffs' complaint because there are material facts in dispute that pertain to the duty of care and a breach of that duty. We are satisfied that the evidence, viewed in a light most favorable to plaintiffs, would permit a rational fact finder to conclude that defendants owed a duty of care to the Irakams and breached that duty through their knowledge or awareness of a scheme to dissolve Astra and establish a similar company.

We offer no opinion on the substantive merits of plaintiffs' claims against the Firm. We hold only that there are fact-sensitive issues concerning the Firm's liability that are not appropriate for summary judgment and must instead be decided by a jury. Accordingly, we reverse the order dismissing plaintiffs'

23

complaint with prejudice and remand for further proceedings consistent with this opinion.

To the extent we have not addressed any remaining arguments raised by defendants, they lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1).

Reversed and Remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0074-24